## TRAPP v. KING.

DEATH—NONJURY CASE—DAMAGES.

Nonjury case arising from death of 4-year-old boy caused by defendant's motor vehicle is ordered reversed for partial new trial limited to damages only per KAVANAGH, C. J., and SOURIS, O'HARA, and ADAMS, JJ., and for trial judge's reassessment of damages for pecuniary injury resulting from the wrongful death, entry of new judgment, and review thereof by Supreme Court per BLACK, J. (CLS 1961, § 600.2922).

DETHMERS, KELLY, and SMITH, JJ., dissenting.

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted February 7, 1964. (Calendar No. 15, Docket No. 50,353). Decided February 2, 1965.

Case by Philip A. Trapp, administrator of the estate of Gerald Marlin Baker, deceased, against Loyd J. King for damages arising by reason of death caused by motor vehicle. Judgment for plaintiff. Plaintiff appeals claiming inadequate award. Reversed and remanded.

*James Thomas Sloan, Jr.,* for plaintiff.

*Howard & Howard (William J. Howard,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTE

5 Am Jur 2d, Appeal and Error § 965.
Propriety of limiting to issue of damages alone new trial granted on ground of inadequacy of damages awarded. 98 ALR 941, 29 ALR2d 1199.
Separate trial of issues of liability and damages in tort. 85 ALR2d 9.

KAVANAGH, C. J. This is an action brought in May, 1962, under the death by wrongful act statute.* Plaintiff, the administrator of the estate of Gerald Marlin Baker, alleged in his declaration that the October, 1961, death of his decedent, the 4-year-old grandson of defendant, was caused by defendant's negligence. Claim was made for loss of "care, love and affection of said deceased until he should become of the age of 21 years, in the sum of $49,000," and for funeral and burial expenses.

The act which gave rise to this cause was the 4- to 7-foot forward lurch by a jeep which was in gear when allegedly negligently started by defendant. As the jeep lurched, plaintiff's decedent screamed, and after the incident was found lying on the edge of a cement-block step.

On trial in 1963 to the court without a jury, the physician who examined the body of the decedent, who had died shortly after arrival at a hospital, testified that it was his opinion that the boy died of a rupture of his spleen caused by a backward fall on the step.

The trial court found the sudden forward movement of the jeep caused the fatal fall and this sudden movement was caused by the negligence of defendant. These findings established defendant's liability, with no affirmative defenses at issue.

The court then delivered its opinion as to the award of damages:

"*The Court*: Those 2 bills (doctor and funeral amounts stipulated to) would total $337.30. That leaves the item of damages to the parents by reason of their being deprived of the care, love and affection of Jerry until he reached the age of 21.

"In their arguments counsel for both parties pointed out to the court that the suffering caused

* CL 1948, §§ 691.581–691.583 (Stat Ann 1959 Cum Supp §§ 27.711–27.713).

these parents can hardly be measured in dollars, nor can they be fully compensated in dollars. This is an action in which damages are sought from the defendant, the grandfather of the deceased, for the benefit of and claimed to have been suffered by the daughter of the defendant and her husband. There is no way that this court in the awarding of damages can assuage the suffering that the parents of this little boy have gone through, or that the defendant, the grandfather of this little boy, has gone through. It is conceivable, of course, that to permit this administrator to force payment by the defendant of a large sum of money might cause further suffering to his daughter. This is a family relationship in this case.

"Having all these things in mind and drawing upon my own common sense, which I hope I have, as I tell the jurors to draw upon their common sense in arriving at damages, it is this court's determination and decision that the plaintiff have a verdict against the defendant in the total amount of $1,837.30.

"*Mr. Sloan* (attorney for plaintiff): The Court said eighteen hundred?

"*The Court*: $1,837.30. $1,500 for the loss of the parents—damages."

From judgment in accordance with that opinion, plaintiff appeals.

On appeal, plaintiff claims the trial court erred in awarding inadequate damages because of being influenced by sympathy for the family relationship involved. Plaintiff seeks damages as set forth in his declaration, or, in the alternative, partial new trial limited to the issue of damages.

A major element in the trial court's determination of damages was specified in the opinion as the avoidance of "further suffering to his (defendant's) daughter (mother of the deceased child)" which might be caused by the forced payment of a large sum of money by defendant to plaintiff. While a

judge without sympathy and compassion would be a discredit to his robes, yet we members of the judiciary can never allow this emotion to be controlling of a legal issue, such as a question of damages. The trial court erred in doing so here.

Remedy for such error is provided for by GCR 1963, 527.1(3), which, under the title "New Trials; Amendment of Judgments," reads:

"1. Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues whenever their substantial rights are materially affected, for any of the following causes: * * *

"(3) Excessive or inadequate damages appearing to have been influenced by passion or prejudice".

This constitutes a codification of the long-standing principle stated in *Michaels* v. *Smith,* 240 Mich 671, 675, in the following manner:

"Not being triers of the facts, we should not substitute our judgment for that of the jury on the question of the size of the verdict unless it was secured by improper methods, or unless we are satisfied that prejudice, sympathy, or some unreasoned element of an important character entered into the jury's consideration of the case."

This principle was reaffirmed in *Teller* v. *George,* 361 Mich 118. It also applies in cases where the trial judge is the trier of the facts.

In regard to the granting of a full new trial or a partial new trial on the issue of damages only, we find direction in our recent decision in *Garrigan* v. *LaSalle Coca-Cola Bottling Co.,* 373 Mich 485. There we restated our disapproval of partial new trials limited to the issue of damages and noted that the only exception made by this Court had occurred in a case where the liability was clear.

As it is, the case at hand presents just such an exceptional situation, and the added circumstance

of having been tried to a court without a jury. The trial court found negligence in defendant's starting the jeep while in gear, and on the question of proximate cause, that the lurching of the jeep was a proximate cause of decedent's fall on the basis that "there is no other explanation for the position of Jerry's body on the top cement block step other than the starting of the jeep." These findings established a case of clear liability, as suggested by *Bias* v. *Ausbury,* 369 Mich 378. Even should the liability be not so clear, however, we would not discourage partial retrial limited to damages only when a trial judge, sitting without a jury, has exhibited as his only error in a thorough and otherwise correct opinion an invalid basis for determining damages.

Plaintiff seeks, alternatively, award by this Court of the full $50,000 prayed for in the declaration and cites GCR 1963, 820.1(7) as the basis for the propriety of such an award. This Court has found that the identical predecessor* to the above sub-rule was not intended to constitute this Court as a super fact-finder in determining the amount of unliquidated damages. *Holcomb* v. *Bullock,* 353 Mich 514.

The judgment is reversed and remanded to the trial court for partial new trial limited to damages only. Plaintiff shall have costs.

SOURIS, O'HARA, and ADAMS, JJ., concurred with KAVANAGH, C. J.

KELLY, J. (*dissenting*). In *Watrous* v. *Conor,* 266 Mich 397, a trial judge's award of damages was reviewed and this Court commented upon the ability of a trial judge, or a jury of 12, or a Supreme Court Justice to correctly assess damages, as follows (p 401):

---

* Court Rule No 72, § 1(g) (1945).

"Individual opinions may differ as to the correctness of awards, even those made by trial judges. It has yet to be determined whether the judgment of a one-man jury is sounder than that of 12. The parties seemed to prefer the judgment of one and waived a jury. Now appellant suggests that the judgment of eight is better than either method."

In that case, and in numerous cases before and since, we have shown our reluctance to substitute our judgment for the trier of the facts, whether trial judge or jury, in regard to the assessment of damages, and have repeatedly held that we will not disturb the verdict unless there is adequate proof of improper methods, prejudice, or sympathy, so great as to shock the judicial conscience.

Appellant now makes the unusual request that this Court find that the trial court's sympathy for the mother caused him to award insufficient damages to the mother and father of the deceased son, and asks us to substitute our judgment for that of the trial court and "award adequate damages in the sum of $50,000," or, in the alternative, order "a new trial as to damages only with instructions that *substantial* damages be awarded." (Emphasis ours.)

I disagree with my Brother's conclusion that the court's "findings established a case of clear liability," and set forth a synopsis of undisputed proofs to show that this case does not meet the partial new trial test.

The grandfather (defendant) had worked around his daughter's home throughout the day helping with chores and finally was in the process of winterizing the jeep which was standing on a roadway elevated above his daughter's property requiring 12 concrete steps to ascend from her lawn to said roadway.

The jeep was parked four feet from and at right angles to the top step. The grandfather had es-

corted his four-year-old grandson from the vicinity of the jeep to the steps and had observed the grandson going down the steps before he went to the front of the jeep, lifted the hood, and started to drain the water preparatory to putting in antifreeze. Concluding that he could not properly drain the water without starting the motor, he went around to the driver's side and got in, turned on the ignition with no intention of moving the jeep; the jeep being in gear jumped forward 4 to 7 feet before defendant stopped it by turning off the ignition and applying the brakes. At or about the time the jeep leaped forward, the grandfather heard a scream.

The grandfather immediately jumped out of the jeep, ran around to the steps, and found Jerry with his feet toward the jeep, suspended head down across the top step. He testified:

"When I picked up Jerry his shoulders were free of the step. And the edge, the east edge, of the top of the step was across his body at a slight angle somewhere in the small of his back. * * * Jerry was hanging on, we might say. As far as I know, his head or shoulders did not touch below."

The medical examination did not disclose any marks or bruises indicating that the boy had been run over, and the doctor testified that the spleen rupture causing death could have been caused by the child falling backward and striking the sharp corner of the cement step.

There were no eyewitnesses as to what happened. The deputy sheriff testified that he thoroughly examined the jeep to see if there were any signs or marks disclosing that the child's body had come in contact with the jeep, and he stated, "I did not locate anything."

In his opinion the court found that defendant made proper observation before turning the ignition key

in the jeep, stating "it is the conclusion of this court that an ordinarily careful and prudent person, under the same or similar circumstances, would have made no further observations than he did," and after so finding he held defendant negligent because "a reasonably careful and prudent person, familiar with the jeep and the operation thereof would have made sure that the jeep was not in gear.   In that respect he was negligent," and, while he was convinced Jerry was "not run over" and could not determine whether "Jerry was either struck by the side of the jeep and propelled backwards, or that he stumbled backwards or stepped backwards to get out of the way of the jeep, to get away from the jeep, when it was started up suddenly, unintentionally, and lurched forward," concluded that "There is no other explanation for the position of Jerry's body on the top cement block step other than the starting of the jeep.   Had the jeep not been started, he would not have ended up where he did."

Evidence that failed to prove the jeep ever touched the boy or that the jeep ever left the roadway while moving forward less than seven feet in the same manner as though intentionally driven forward, after defendant had made proper observations for the safety of the boy, does not establish the "exceptional situation" of "clear liability" entitling plaintiff to partial new trial confined to damages.

Appellant, endeavoring to convince this Court that because of "misconception of the law or the evidence in the case," the trial court "erred in awarding nominal damages," stated as follows:

"Plaintiff and appellant is convinced that the circuit court for Kalamázoo county was influenced by a misconception of the law or the evidence in the case, and erred in *awarding nominal damages* for the loss of care, love, and affection of the deceased

in the sum of $1,500. Appellant's position is substantiated in that respect by the opinion of the circuit judge, a portion of which is as follows:

" 'In their arguments, counsel for both parties pointed out to the court that the suffering caused these parents can hardly be measured in dollars, nor can they be fully compensated in dollars. This is an action in which damages are sought from the defendant, the grandfather of the deceased, for the benefit of and claimed to have been suffered by the daughter of the defendant and her husband. There is no way that this court in the awarding of damages can assuage the suffering that the parents of this little boy have gone through or that the defendant, the grandfather of this little boy, has gone through. It is conceivable, of course, that to permit this administrator to force payment by the defendant of a large sum of money might cause further suffering to his daughter. This is a family relationship in this case.' " (Emphasis ours.)

I disagree with appellant's conclusion that the court awarded only nominal damages. Nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages;[1] nominal damages are a small, trivial sum awarded for technical injury due to a violation of some legal right, their award serving only to determine the right;[2] nominal damages are awarded when plaintiff has merely a "technical right of action."[3]

When this Court construes statutes or contracts we endeavor to harmonize all the parts as far as reasonably possible, thus construing such statute or

---

[1] Restatement of the Law of Torts, Nominal Damages, § 907, pp 551–553.

[2] 9 MLP, Damages, ch 1, § 1, p 13.

[3] *Haven* v. *Beidler Manfg. Co.*, 40 Mich 286.

contract as a whole[4] and producing a harmonious, consistent construction of the entire instrument.[5]

Using this method of determining meaning and intent, we consider the concluding paragraph of the court's oral opinion, which appellant does not quote or refer to in his brief. That concluding paragraph is:

"Having all these things in mind and drawing upon my own common sense, which I hope I have, as I tell the jurors to draw upon their common sense in arriving at damages, it is this court's determination and decision that the plaintiff have a verdict against the defendant in the total amount of $1,837.30."

In 1960 when this Court established a new measure of damages,[6] we recognized that we were creating a difficult problem but stated that in spite of that fact (p 339) "we cannot shirk this difficult problem of valuation."

We did not in *Wycko* instruct triers of fact how to meet the difficult task of placing a dollar valuation on love, affection, companionship, et cetera, but we certainly did not condemn the method used by the trial court in the instant case, namely, drawing upon his own common sense, which had been developed and acquired during almost 20 years on the Bench.

The court did not say he was confining his award to $1,837.30 because a larger amount *would* cause suffering to defendant's daughter. In relation to the words appellant objects to, the court used the words "conceivable" and "might." I cannot agree with a conclusion that what the court thought possibly might happen controlled him in awarding damages.

---

[4] *Associated Truck Lines, Inc.,* v. *Baer,* 346 Mich 106.

[5] *Lee* v. *Employment Security Commission,* 346 Mich 171.

[6] *Wycko* v. *Gnodtke,* 361 Mich 331.

· My Brother in his remand opinion does not directly answer the one and only question appellant presented to this Court, namely: "Is a judgment in the sum of $1,500, exclusive of funeral and medical expenses, adequate compensation for the wrongful death of a four-year-old boy?"

The fact that appellant made extensive research seeking cases that would support his contention of inadequacy is disclosed by his brief listing nine Michigan decisions and 27 decisions from other jurisdictions.

Only three of these 36 cited cases deal with the issue presented in the instant case, namely, the responsibility of an appellate court to reverse an inadequate verdict of the trial court, and two of these three involve decisions from the appellate court of the State of Louisiana,[7] and the other is from the State of Mississippi.[8]

Both of the Louisiana cases were decided by the third circuit court of appeals in 1962. In the *Burnaman Case,* involving the death of a young child, the court stated (p 712):

"Whenever possible, assessment of damages should be in accordance with the most recent and similar cases. * * * Considering the facts and circumstances of this case as well as recent awards in similar cases we are of the opinion that the judgment by the trial court awarding each parent $2,500 is inadequate and should be amended so as to award each parent the sum of $7,500."

And, in the *Sepulvado Case* the court said (pp 433, 434):

"As to the lower court's award of damages, we feel that $4,500 to each parent for the loss of the

---

[7] *Burnaman* v. *La Prairie* (La App), 140 S2d 710, and *Sepulvado* v. *General Fire & Casualty Co.* (La App), 146 S2d 428.
[8] *Green* v. *Hatcher,* 236 Miss 830 (105 S2d 624).

love, affection, and companionship of their son [9 years old], and mental pain and suffering is inadequate. * * * Considering the facts and circumstances of this case as well as recent awards in similar cases we are of the opinion that the judgment of the trial court should be amended so as to award each parent the sum of $7,000. * * * As to the amount of $679.30 special damages for medical and funeral expenses awarded by the trial court * * * we find no error and therefore affirm this part of the judgment."

In the Mississippi case, the supreme court considered a $3,000 jury verdict for the wrongful death of a 10-year-old boy and reversed and remanded for new trial, expressing doubt that the jury had awarded punitive damages against the defendant who had previously been convicted of manslaughter on the same facts.

Appellant argues that our findings in *Wycko* v. *Gnodtke, supra,* where we approved an award of $14,000 damages for the death of a 14-year-old boy and, also, our approval of the $20,000 award of damages for the wrongful death of a five-year-old boy in *Elliott* v. *A. J. Smith Contracting Co.,* 358 Mich 398, is "support of plaintiff and appellant's position that $1,500 is only a nominal award based upon an attempted mitigation of damages by the Kalamazoo county circuit court."

We have not previously been presented with appeals involving questions of inadequacy of awards in companionship cases, but there are numerous decisions of this Court involving inadequacy in pain and suffering cases, and in our most recent decision, *Draper* v. *Switous,* 370 Mich 468, we considered plaintiff's claim that judgment for $1,250 to plaintiff in a nonjury action for injuries to arm sustained in fall on defendant's premises was inadequate. We held that while the out-of-pocket losses amounted

to $859.63 and that even though plaintiff had suffered a limitation of movement in her arm, yet we would affirm the trial court's judgment for the reason that said judgment did not "shock the judicial conscience."

The approval of the verdicts in *Wycko* and *Elliott* did not mean that this Court would have awarded such an amount if we were the original triers of the cases and an approval in the instant case does not mean that if the case had originally been tried in this Court instead of the Kalamazoo circuit court the award would have been limited to $1,837.30.

If we hold to our present rule that we will not substitute our judgment for that of the trial judge unless the judgment "shocks our judicial conscience" and if we refuse to adopt Louisiana's uniformity of judgment rule testing fairness by considering judgments with previous awards, then there is bound to be in the future a wide variance between the amount of judgments in cases that we approve.

I agree with my Brother's statement that this Court is not "a super fact-finder in determining the amount of unliquidated damages," and approve our reluctance in the past to act in that capacity, but believe that if the majority of our Court in this case refuse to accept the trial judge's award they should readopt the words of *Wycko*, "we cannot shirk this difficult problem of valuation," and determine damages. While I shall dissent to such a course, yet I believe it preferable to placing a trial judge in the embarrassing position in which he will be placed by an opinion that commands him to shed his emotions —try again to evaluate love, companionship, et cetera.

I do not agree with my Brother's opinion that the trial judge allowed his emotions to control in deciding the question of damages. I do not agree

with appellant that the award is such as "to shock the judicial conscience." I vote to affirm.

The judgment should be affirmed. Costs to appellee.

DETHMERS, J., concurred with KELLY, J.

SMITH, J., concurred in result.

BLACK, J. (*for remand*). I would remand the original record for preparation and filing by the trial judge of that which so far is missing, that is, an opinion which analyzes the proof with respect to pecuniary injury, employs the presumption of pecuniary injury which arises from the wrongful taking of an infant of tender years (*Black* v. *Michigan Central R. Co.,* 146 Mich 568, followed to the point in *Pratt* v. *Detroit Taxicab & Transfer Co.,* 225 Mich 147, and *Crook* v. *Eckhardt,* 281 Mich 703, 713, 714), and then assesses in terms of dollars the pecuniary injury suffered by the parents of plaintiff's decedent.

Thereupon the trial judge should set aside the present judgment and enter a new one for plaintiff. The new judgment should be in such amount, determined according to the damage-measure provided by the wrongful death statute (CLS 1961, § 600.2922, [Stat Ann 1962 Rev §.27A.2922]), as will in the judgment of the trial court satisfy such damage-measure; not in such amount as might prevent "further suffering" of the child's mother. The latter is not a proper yardstick for measurement, under the statute, of "pecuniary injury resulting from such death."

Following entry of such new judgment either party, if aggrieved thereby, may have the new opinion and judgment certified to this Court with the original record; whereupon we may test the complete

record, for error, in accordance with such new briefs as the parties may advisedly present; such briefs to be typewritten and supplementary to the present printed briefs.