MULCAHY v. ARGO STEEL CONSTRUCTION COMPANY.

1. NEGLIGENCE—POWER CRANE—ELECTRICAL GROUND—INSTRUCTIONS.
   Evidence in record supported instruction to jury that defendant steel erector could be guilty of negligence in failure to provide electrical ground for power crane, when defendant's foreman testified that crane was not grounded and plaintiff's expert testified that electrical grounding of power crane would be a safety feature if crane should come into contact with overhead electric power line.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 38 Am Jur, Negligence § 344 *et seq.*
[2] 20 Am Jur, Evidence § 1206.
[3] 38 Am Jur, Negligence §§ 23, 24.
[5–7] 20 Am Jur, Evidence, Supp § 973.1.
   Admissibility of mortality tables in personal injury actions as dependent upon showing of permanency of injury.    50 ALR2d 419.
[8] 5 Am Jur 2d, Appeal and Error §§ 636, 891.
[9] 5 Am Jur 2d, Appeal and Error § 810.
[10] 5 Am Jur 2d, Appeal and Error §§ 636, 819; 22 Am Jur 2d, Damages §§ 364, 366, 367.
[11] 35 Am Jur, Master and Servant § 159 *et seq.*
   27 Am Jur, Independent Contractors § 39.
[12, 13] 53 Am Jur, Trial § 574 *et seq.*
[14] 39 Am Jur, New Trial § 21 *et seq.*
[15] 39 Am Jur, New Trial § 25.
   Grant of new trial, or reversal of judgment on appeal as to one joint tort-feasor, as requiring new trial or reversal as to other tort-feasor.  143 ALR 7.
[16] 5 Am Jur 2d, Appeal and Error § 1011.

2. WITNESSES—EXPERT—PRACTICAL EXPERIENCE—CREDIBILITY.

Fact that expert witness who testified that electrical ground on steel crane would be safety feature had no practical experience with cranes affected the weight of his testimony, but did not eliminate its evidentiary value.

3. NEGLIGENCE—POWER CRANE—ELECTRICAL GROUND—KNOWLEDGE OF USERS.

Test of negligence of defendant in not providing electrical ground on crane is not whether defendant or its employees were aware of safety benefit conferred by electrical grounding, but whether a reasonably prudent person in defendant's position would have realized benefit and provided electrical grounding devices on crane.

4. SAME—POWER CRANE—GROUNDING DEVICES—QUESTION FOR JURY.

Whether a reasonably prudent man in defendant's position would have provided electrical grounding devices on power crane *held,* a question of fact to be determined by the jury from the evidence.

5. EVIDENCE—MORTALITY TABLES—ADMISSIBILITY.

Mortality tables are inadmissible in a suit for personal injuries unless the injuries are of a permanent nature.

6. SAME—PERMANENT INJURY.

Plaintiff's testimony in action for personal injuries that his suffering and disability continued 4 years after accident, coupled with expert medical testimony that plaintiff suffered from posttraumatic psychoneurosis caused by the accident and such a condition was chronic in nature and could last into future was sufficient evidence to take question of permanency of injuries to jury.

7. SAME—PERMANENT INJURY—MORTALITY TABLES—ADMISSIBILITY.

Testimony from which jury in action for personal injuries could have found plaintiff's injury to be permanent was sufficient to warrant admission of mortality tables into evidence.

8. APPEAL AND ERROR — QUESTIONS REVIEWABLE — AMBIGUITY — INSTRUCTIONS — OBJECTIONS.

Court will not consider prejudicial effect of jury instruction containing assertedly ambiguous words when instruction was not objected to at trial (GCR 1963, 516.2).

9. SAME—INSTRUCTION TO JURY—REQUEST TO INSTRUCT.

Refusal of trial court to give requested instruction relative to aggravation of pre-existing injury was not error when substance of refused instruction was given in other words.

10. DAMAGES—EXCESSIVE—VERDICT—AGE.

Court of Appeals will not disturb $75,000 jury verdict as excessive in action for personal injuries, where record does not reflect any appeal to passion, prejudice, or sympathy, or show that anything other than the evidence at the trial influenced the verdict and 30-year-old plaintiff sought damages for loss of earning capacity, future damages, permanent injuries, and disruption of both his business and personal life.

11. NEGLIGENCE—INDEPENDENT SUBCONTRACTOR—LIABILITY OF CONTRACTOR.

A contractor is not liable for the negligent acts of an independent subcontractor, over whom he has no right of control, except where the work to be done by the independent subcontractor is of such character that it necessarily subjects third persons to unusual danger.

12. TRIAL—INSTRUCTIONS—THEORY OF LIABILITY.

Jury instructions by the court must adhere to the pleadings and evidence of the case, and it is reversible error for the trial court in its instructions to submit a theory of recovery to the jury which is unsupported by the pleadings and the proofs.

13. NEGLIGENCE—THEORY OF LIABILITY—PLEADING—EVIDENCE—INSTRUCTION.

Trial court erred in instructing jury that it could find defendant contractor liable for acts of defendant subcontractor if nature of subcontractor's work was such that it subjected third persons to unusual danger, where this theory of liability was not pleaded or raised at pretrial conference, and evidence offered to support it was excluded at trial.

14. NEW TRIAL—LIMITED ISSUE.

Court rules clearly indicate an intent to encourage the granting of limited new trials if this procedure will serve the cause of justice to the parties in a given situation (GCR 1963, 527.1).

15. SAME—LIMITED ISSUE—LESS THAN ALL PARTIES.

A new trial will be granted on the limited issue of liability of one defendant, in a case where a joint and several judgment against two parties defendant has been rendered, and judgment was proper as to 1 defendant, but improper as to second because of erroneous jury instruction on theory of liability not presented by pleadings or evidence.

16. COSTS—LIMITED NEW TRIAL.

Taxation of costs is ordered deferred, until determination of liability is made as to 1 of several defendants on limited new trial as to such defendant.

Appeal from Wayne; Bowles (George E.), J. Submitted Division 1 April 6, 1966, at Detroit. (Docket Nos. 619, 620.) Decided September 13, 1966. Leave to appeal denied by Supreme Court November 22, 1966. See 378 Mich 741.

Declaration by William Mulcahy against Argo Steel Construction Company and Great Lakes Wrecking Company, Michigan corporations, John Mahlin, Richard Steinhoff, and others for injuries sustained in construction accident. Verdict and judgment against corporate defendants, and in favor of natural person defendants. Corporate defendants appeal. Appeals consolidated. Judgment affirmed as to Argo Steel Construction Company, and reversed as to Great Lakes Wrecking Company and remanded for new trial limited to issue of liability.

*Samuel W. Barr* and *Sanford N. Lakin,* for plaintiff.

*Alexander, Buchanan, & Conklin (Floyd S. Westcott,* of counsel), for Argo Steel Construction Company.

*Davidson, Gotshall, Kelly, Halsey, & Kohl (Roger F. Wardle,* of counsel), for Great Lakes Wrecking Company.

Lesinski, C. J. William Mulcahy, plaintiff, filed suit against John Mahlin, Richard Steinhoff, Great Lakes Wrecking Company, Argo Steel Construction Company, Arrow Steel Company, the Detroit Edison Company, city of Detroit, and Michigan Bell Telephone Company, alleging injuries and damages resulting from an accident which occurred on April 30, 1959, at 15704 Telegraph road, Detroit, Michigan. Michigan Bell and Detroit Edison were dismissed by stipulation at the pretrial conference. Subsequently, the city of Detroit and Arrow Steel were also voluntarily dismissed by plaintiff.

In the latter part of 1958, Mahlin and Steinhoff entered into a joint venture to construct a building, on land owned by them, located at 15704 Telegraph road, Detroit, Michigan. The general contract to construct the building, entered into on March 13, 1959, was given to the Great Lakes Wrecking Company. Mahlin, in addition to being the co-owner of the land, was also president and general manager of Great Lakes Wrecking Company.

Great Lakes Wrecking contracted, by a written agreement dated March 25, 1959, with Arrow Steel to provide and erect certain steel joists and beams for the building. Thereafter, Arrow Steel hired Argo Steel to erect the steel joists and beams and put up the roof.

Plaintiff, who was also a contractor, had business dealings with Mahlin prior to the accident of April 30, 1959. On the day of the accident, plaintiff, 30 years old, visited Mahlin at 15704 Telegraph road for the purpose of discussing the construction of other buildings for Mahlin. While on the premises, Mahlin took plaintiff around the site to inspect the construction in progress.

At the time of the accident, Argo Steel had a crew of men on the premises and one of its employees was operating the crane. The crane operator was attempting to lift a steel joist into place with the crane when the boom of the crane or the joist came into contact with a power line. An arc of electricity jumped from the cab of the crane, struck the plaintiff, who was standing near the crane, in the right temple, rendered him unconscious and caused the injuries alleged for which plaintiff seeks to recover damages. The power line was approximately 20′ to the west of the building and 30′ in the air. This line was at a potential of about 4,100 volts to ground.

A jury trial followed, and a verdict of no cause of action was rendered against Mahlin and Steinhoff. The jury found against Argo Steel and Great Lakes and awarded plaintiff $75,000 in damages. A joint judgment was granted in accordance with the jury verdict against said defendants Argo Steel and Great Lakes. Argo Steel and Great Lakes appeal from the trial court's denial of their motions for a new trial.

We shall discuss the assignments of error raised by each defendant separately, beginning with those asserted by Argo Steel.

Defendant Argo Steel claims as error the trial court's instruction, timely objected to, that plaintiff could recover on the theory of Argo Steel's negligent failure to provide electrical ground or grounds on its power crane.

Defendant Argo Steel contends that the record is void of any evidence which is supportive of said charge.

This contention is without merit in view of the testimony of Marion A. Wiley, foreman of the Argo Steel crew, who admitted the crane was not grounded, and Professor Fairchild, an expert in the field of electrical engineering, who testified that electrical grounding of power cranes would be a safety feature:

"*A.* Well, the grounding, first of all, is a safety path. Normally, if the electricity can't find any other place to go and it is something like water in that respect, the line, so to speak, are at one elevation, something like the falls, like a waterfalls, and here, at the top of the waterfalls we have the high potential and at the low, we have zero, and electricity, in that sense, is something like that. So that the electricity, if given any opportunity at all, will flow from the high point to the low point. And,

therefore, if it has to find a path through a human being it is unfortunate but that is what happens.

"Now, to minimize the possibility of this—and I mean just what I said—to minimize the possibility of this, grounding wires are used and grounding devices are simply conductors which have more or I should say much less resistance than the human body and, therefore, the possibility of the flow through the conductor is much better than it would be through the person and that is why we say if things are properly grounded there is less likelihood for the individuals to become shocked."

It was shown on cross-examination that Professor Fairchild had no practical experience with cranes. Such discrediting only affects the weight of the testimony; it does not eliminate the evidentiary value of such testimony. *Hall* v. *Murdock* (1897), 114 Mich 233; *Sitta* v. *American Steel & Wire Division of U. S. Steel Corp.* (CA 6, 1958), 254 F2d 12.

Defendant Argo Steel further objects to the instructions relating to the negligent failure of Argo Steel to provide electrical grounding devices on its power crane on the basis that there was no evidence that Argo Steel or its employees were aware of any benefit to be derived from the use of electrical grounds. This argument is fallacious. The question that must be answered in this regard is not whether Argo Steel or its employees were aware or realized the benefits to be derived from the use of the grounding devices on the power crane, but whether or not a reasonably prudent person in the position of Argo Steel, would have realized the benefits of grounding devices and equipped the power crane with such devices. This is a question of fact for the jury to be determined from the evidence. *Frederick* v. *City of Detroit, D. S. R.* (1963), 370 Mich 425; *Northern Oil Co.* v. *Vandervort* (1924), 228 Mich 516.

Error is also assigned by Argo Steel to the trial court's refusal to exclude from evidence certain mortality tables. Argo Steel contends in support of this assignment of error that there were no proofs of permanent injury or damages and that the proofs suggest that plaintiff was not a healthy individual prior to and at the time of the accident in question.

The rule of general application in this State is that mortality tables are inadmissible in a suit for personal injuries unless it appears that the injuries are of a permanent nature. *Mott* v. *Detroit, G. H. & M. R. Co.* (1899), 120 Mich 127; *Leach* v. *Detroit Electric Railway* (1900), 125 Mich 373.

Plaintiff testified that his suffering and his disability were still continuing some four years after the injury. Plaintiff's testimony, coupled with the medical testimony of Dr. Bohn, a neurologist and psychiatrist, that plaintiff suffered from posttraumatic psychoneurosis caused by the accident and such a condition was chronic in nature and could last into the future, was sufficient evidence of a permanent injury to take the case to the jury on this issue. *Prince* v. *Lott* (1963), 369 Mich 606.

Plaintiff's testimony, coupled with that of Dr. Bohn, from which an inference could be drawn that plaintiff's injuries were permanent in nature, was sufficient to warrant the admission of the mortality tables in evidence. In *Norris* v. *Detroit United Railway* (1916), 193 Mich 578, 582, 583, the Court wrote:

"If * * * it had appeared that there was any dispute about the question of whether or not the plaintiff was an ordinarily healthy woman, then that question would have been for the jury and the mortality tables would be admissible for them to

use if they should find that she was an ordinarily healthy woman."

Defendant Argo Steel claims that the following instructions are erroneous:

"If plaintiff is entitled to recover, if he has shown himself entitled under the facts and the law, the facts as you find them, the law as the judge gives it to you, he is entitled to recover all damages which he has suffered up to the time of this trial and for all damages which it is *reasonably probable* will be sustained in the future. * * * (Emphasis supplied.)

"Similarly, ladies and gentlemen, I charge you that if you consider any allowance of damages for the future these must have been established with reasonable certainty by competent medical testimony. You cannot bring in a verdict in this case for permanent injury unless you find it has been established by competent medical testimony that there is a reasonable probability of such permanent injury."

Argo Steel objects to the use of the phrase "reasonably probable" as being ambiguous and as having a tendency to confuse the jury as to the proofs necessary to find that plaintiff suffered a permanent injury.

We will not consider the prejudicial effect of such instruction in view of Argo Steel's failure to object to the above instructions and call to the trial court's attention any ambiguity in the charge. GCR 1963, 516.2. See, also, *Salvatore* v. *City of Harper Woods* (1963), 372 Mich 14; *Nuccio* v. *Severini* (1965), 374 Mich 189.

Defendant Argo Steel charges error in the trial court's failure to instruct the jury in accordance with its requests which read:

"I further charge you that you may not find that plaintiff sustained any aggravation of a pre-existing injury or condition, there being no pleadings or proof of this fact."

Instead the court instructed the jury as follows:

"Secondly, I do advise and charge you that we have, in this case, no claim by plaintiff of aggravation of a pre-existing injury or condition."

The substance of the refused instructions was covered by the instructions given by the trial court. The refusal to give the requested instructions was not error. *Ferries* v. *Copco Steel & Engineering Co.* (1955), 344 Mich 345.

It is the final contention of Argo Steel that the verdict is excessive.

If the jury accepted plaintiff's version of the case, the damages awarded are not excessive, as plaintiff seeks damages for loss of earning capacity, future damages, permanent injuries, and disruption of both his business and personal life.

The record does not reflect any appeals to passion, prejudice, or sympathy, nor does it appear that anything other than the evidence presented influenced this verdict. Therefore, it is not within the province of this Court to disturb the judgment in this respect. *Fishleigh* v. *Detroit United Railway* (1919), 205 Mich 145; *Adelsperger* v. *City of Detroit* (1929), 248 Mich 399.

In view of what has been said above, the decision of the lower court is affirmed as to Argo Steel.

Defendant Great Lakes Wrecking assigns as error certain instructions by the trial court:

"Now, ladies and gentlemen, let us get clearly in mind at this point what the differences are in respect to liability obtaining from the fact that one is an independent contractor. It is the general rule

and is the law of the State of Michigan that a general contractor such as Great Lakes is not liable for the negligent acts of an independent contractor, if you so find that Argo is, in the absence of the right of control.

"That is to say, if you find, under all the facts and circumstances, that Argo is an independent contractor, then the general contractor, as a general rule, is not liable for the negligent acts of Argo unless Great Lakes has retained the right of ultimate control.

"Now, this specification is subject to an exception. It is this: There is no immunity from liability if the work to be done is of such character that it necessarily subjects third persons to unusual danger. That is to say, under the facts of this case, if you find in your deliberations that the nature of this work was such, and it was of such character that it necessarily subjected third persons, such as this plaintiff to unusual danger, then even though you find that Argo was an independent contractor in fact and in law, the general contractor might still be liable for causal negligence of the independent contractor, Argo."

Great Lakes contends it was prejudicial error for the trial court to instruct the jury on a theory of liability which had not been pleaded or claimed at the pretrial and which had been specifically excluded from the case by the court during the course of the trial.

The rule in this State, which is not questioned by Great Lakes and was correctly stated by the trial judge, is that: "A general contractor is not liable for the negligent acts of an independent subcontractor, in the absence of the right to control." See *Utley* v. *Taylor & Gaskin, Inc.,* 305 Mich 561, and authorities therein cited. "One of the exceptions to this rule is that there is no immunity from responsibility when the work to be done is of such

character that it necessarily subjects third persons
to unusual danger." *Barlow* v. *Krieghoff Co.* (1944),
310 Mich 195, 198.

Under this theory, commonly referred to as the
"inherently dangerous activity" theory, the general
contractor or employer is held liable not for his own
culpable negligence, but for the negligence of the
independent contractor engaged in an activity of
such a character that it necessarily subjects third
persons to unusual danger. Thus, the general con-
tractor is made vicariously liable for the negligent
acts of the independent contractor. See Prosser
on Torts (3d ed), § 70.

Plaintiff, in his declaration, set forth the follow-
ing pertinent claims against Great Lakes Wrecking
Company:

"21. That the defendants, John H. Mahlin,
Richard D. Steinhoff, and the Great Lakes Wreck-
ing Company, were negligent in inviting the plain-
tiff on their property for business reasons without
using reasonable care to warn the plaintiff of the
dangerous condition which then and there existed,
failure to protect plaintiff from known dangers and
those dangers which with reasonable care said de-
fendants could discover, or the activities of the
Argo Steel Construction Company and the Arrow
Steel Company, which the said defendants then and
there knew to be dangerous.

"22. That the defendants, John H. Mahlin,
Richard D. Steinhoff, and the Great Lakes Wreck-
ing Company did fail to make the premises safe for
the plaintiff who was a business invitee on said
premises. * * *

"26. That as a direct result of the negligence of
all of the parties, the plaintiff did sustain the elec-
trical burn, scars, convulsions, and the heart at-
tack as above enumerated, which resulted in dam-
age to his brain, and his life was despaired of.
He was confined to a hospital for a period of time

and then he was confined to his bed at home for an additional period of time. The scars, brain and heart damage, and the complete disruption and damage to his nervous system has left the plaintiff permanently affected and plaintiff verily believes that these conditions are of a permanent nature and will continue during the balance of his natural life."

After careful scrutiny of plaintiff's declaration, we find that plaintiff sought to hold defendant Great Lakes accountable for the following negligence: (a) negligence in inviting plaintiff on their property for business reasons without using reasonable care to warn plaintiff of the dangerous condition then and there existing; (b) negligent failure to protect plaintiff from known dangers which with reasonable care said defendants could discover; (c) negligent failure to protect plaintiff from the activities of the Argo Steel Construction Company, and the Arrow Steel Company, which Great Lakes knew to be dangerous; and (d) negligent failure to make the premises safe for plaintiff who was a business invitee.

We do not find a scintilla of facts pleaded to support the so-called "inherently dangerous activity" theory. The only negligence plaintiff seeks to hold Great Lakes responsible for is the *active* negligence of Great Lakes. The pleadings are void of any theory seeking to hold Great Lakes vicariously liable for Argo Steel's negligence predicated upon the nature of the work being performed. It is further noted that this theory was not raised during the pretrial conference and we find no mention of it in the pretrial summary.

The question of whether plaintiff had pleaded the "inherently dangerous activity" theory first arose during the course of the trial. The record discloses that upon objections by defendant Great Lakes Wrecking Company, the trial court expressly ex-

cluded all testimony and proofs relating to the theory on the grounds that plaintiff had not pleaded it. Notwithstanding this ruling, the trial court gave the above instructions over Great Lakes' objection.

Thus, the remaining question to be decided is whether the trial court, in its instruction to the jury, erred in introducing into the case a theory of liability which was not pleaded and for which no proofs were presented during trial.

Jury instructions by the court must adhere to the pleadings and evidence of the case. It is reversible error for the trial court in its instructions to submit a theory of recovery to the jury which is unsupported by the pleadings and the proofs. *Bockoff* v. *Curtis* (1928), 241 Mich 553; *Burt* v. *Detroit G. H. & M. R. Co.* (1933), 262 Mich 204; *Horst* v. *Tikkanen* (1963), 370 Mich 65.

The judgment of the trial court is affirmed as to defendant Argo Steel; the portion of the judgment as to defendant Great Lakes Wrecking Company is reversed[1] and remanded for a new trial limited to the issue of liability. The judgment as to defendant Argo Steel will be held in abeyance until the issue of liability is determined against Great Lakes Wrecking Company. If the jury finds Great Lakes is liable, then the trial court will enter a joint and several judgment of $75,000 against both defendants; if the jury should find Great Lakes is not liable, then the judgment of $75,000 against Argo Steel will be reinstated as of the date of the original judgment.

In view of the nature of our decision, we feel additional comments are necessary.

---

[1] See, as authority for the proposition that joint and several judgments may be reversed for a new trial as to a portion of the defendants and allowed to stand as to the remainder: *Moreland* v. *Durocher* (1899), 121 Mich 398; *Uhrstadt* v. *Sauer Cooperage Co.* (1944), 309 Mich 201.

GCR 1963, 527.1 authorizes a new trial to be granted "to all or any of the parties and on all or part of the issues whenever their substantial rights are materially affected." This rule notwithstanding, our Supreme Court has not favored limited new trials. *Bias* v. *Ausbury* (1963), 369 Mich 378; *Trapp* v. *King* (1965), 374 Mich 608. We also express reluctance to grant limited new trials. However, the unambiguous language of sub-rule 527.1, *supra,* clearly indicates an intent to encourage the granting of limited new trials if this procedure will serve the cause of justice to the parties in a given situation.

In keeping with this philosophy, our Supreme Court recently made an exception to its policy of refusing to grant limited trials and remanded a case to the trial court for a partial new trial limited to the issue of damages where the issue of liability had been established. *Trapp, supra.*

In *Doutre* v. *Niec* (1965), 2 Mich App 88, 90, a case of first impression in Michigan, this Court was faced with the question of a new trial limited to the issue of liability. We refused to extend the rule enunciated in *Trapp, supra,* in the circumstances there presented, saying: "No compelling reason moves us to extend the rule."

The instant case is clearly distinguishable from *Doutre, supra,* in that it presents compelling reasons, which were absent in *Doutre,* for limiting the new trial to the question of liability only. First, if there were a complete reversal as to both defendants, plaintiff would lose his valid judgment, which was not tainted with error, against Argo Steel. Secondly, if the judgment were reversed for a new trial only as to Great Lakes for redetermination on both the liability and damages issues, ancillary problems, both substantive and procedural, would result,

Since it is possible both to avoid these problems and expedite the final disposition of the case in a just manner through a procedure specifically authorized and encouraged by the court rules, we reverse as to defendant Great Lakes Wrecking Company for a new trial limited to the liability issue only, in the manner heretofore ordered.

The matter of taxing costs is ordered held in abeyance pending the final determination of the liability or lack thereof of defendant Great Lakes Wrecking Company, the matter of awarding costs to be determined by order upon motion filed.

QUINN, J., concurred.

The untimely death of Judge WATTS prevented his participation in this opinion.