CLEVELAND v RIZZO

Docket No. 44075. Submitted May 7, 1980, at Detroit.—Decided
    August 28, 1980. Leave to appeal applied for.

Earris Cleveland, administratrix of the estate of Waymon T.
    Cleveland, deceased, brought a medical malpractice action
    against Paul Rizzo, M.D. alleging negligence resulting in the
    death of the decedent. Wayne Circuit Court, Michael L. Stacey,
    J., entered a judgment of no cause of action against the
    defendant following a jury verdict. Plaintiff appeals, alleging
    the instructions of the trial court to the jury injected a novel
    theory into the case not supported by the pleadings or the
    evidence presented at trial and, thus, constituted reversible
    error. *Held:*

    The instructions correctly stated the applicable law, but were
    phrased in such a way as to appear to be such an uncompro-
    mising assertion which, under different circumstances, conceiv-
    ably could have an unwarranted and adverse effect upon an-
    other case and, thus, should not have been given without
    greater amplification of their application to the facts of the
    case. Nevertheless, they must be read as a whole and in light of
    closing arguments and rebuttal of counsel. When so read, they
    do not rise to the level of reversible error.

    Affirmed.

1. TRIAL — JURY INSTRUCTIONS — NOVEL THEORY — ERROR.

    An instruction to a jury which injects into a case a novel theory
        not supported by the pleadings or the evidence presented at
        trial would constitute reversible error.

2. TRIAL — JURY INSTRUCTIONS — APPLICATION TO FACTS.

    An instruction to a jury phrased in such a way that it appears to
        be such an uncompromising assertion which, under different
        circumstances, conceivably could have an unwarranted and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 75 Am Jur 2d, Trial §§ 646, 647, 661.
[3] 75 Am Jur 2d, Trial § 925.
[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 110.

adverse effect upon another case should not be given without greater amplification of its application to the facts of a case.

3. TRIAL — JURY INSTRUCTIONS — ERROR.
   Jury instructions must be read as a whole and in light of closing arguments and rebuttal of counsel in determining whether or not they constitute reversible error.

4. PHYSICIANS AND SURGEONS — PROFESSIONAL SKILL — STATUTES.
   A medical practitioner is not a guarantor of results, but warrants that he possesses the professional skill ordinarily possessed by medical practitioners as reasonably implied in light of reasonably available facilities (MCL 600.2192a[b]; MSA 27A.2912[1][b]).

*Jasmer, Lobb & Weiss, P.C.,* for plaintiff.

*Kerr, Russell & Weber* (by *Robert R. Nix, II),* for defendant.

Before: BEASLEY, P.J., and M. F. CAVANAGH and W. A. PORTER,* JJ.

PER CURIAM. Plaintiff brought a medical malpractice action against the defendant, alleging that his negligence resulted in the death of her husband. Defendant was said to have breached the standard of care required of medical practitioners in two respects: (1) by failing to conduct adequate preoperative tests, thus, resulting in misdiagnosis and unnecessary surgery, and (2) by failing to provide adequate postoperative care. No allegations concerning the adequacy of the doctor's performance of the operation itself were made.

Defendant diagnosed plaintiff's decedent's problem as diverticulitis and recommended surgery. The deceased agreed, and defendant performed a surgical procedure known as a left colectomy, which involves the removal of a segment of the colon from the left side of the abdomen. The

* Circuit judge, sitting on the Court of Appeals by assignment.

segment of the colon which was removed did not reveal diverticulitis.

Complications ensued during the postoperative period. Leakage of fecal material in the area where the colon had been resutured and attached occurred in the deceased. Drainage is a normal expectation of such surgery. Antibiotics were given to the deceased. However, they proved unable to combat infection caused by the leakage. The decedent went into shock and died.

The trial was sharply contested. Both parties presented medical experts who vigorously disagreed on whether there was evidence that defendant had breached the standard of care in his handling of the deceased patient. The jury returned a verdict of no cause of action against defendant.

The only issue raised on appeal is whether the trial court's charge that "[n]o medical practitioner can be required to guarantee results" requires reversal. Plaintiff contends that this instruction injected a new issue of a contractual guarantee into the case not supported by the proofs and that the statement was legally inaccurate.

The entire context of the jury instruction concerning this matter reads as follows:

"I shall give you the definition of some important legal terms which I shall use later in describing the claims of the parties and in telling us what they must prove. Please listen carefully to the definitions so you will understand the terms when they are used later.

"When I use the words 'proximate cause,' I mean first that there must have been a connection between that conduct of the Defendant which the Plaintiff claims was negligent and the injury complained of by the Plaintiff; and second, that the occurrence which is claimed to have produced that injury was a natural and probable result of such conduct of the defendant.

"No medical practitioner can be required to guarantee results.

"Negligence as applied to a professional, in this case a general surgeon, is called malpractice and is defined as a breach of the professional's legal duty.

"In an action involving malpractice the Plaintiff has the burden of proving that in light of the state of art existing at the time of the alleged malpractice that the Defendant, if a specialist, failed to provide that recognized standard of care within that specialty as reasonable [sic] applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the Defendant's failing to provide that standard, the Plaintiff suffered an injury."

Read by itself, the objected-to sentence does give the impression that a separate issue of a contractual guarantee was present in the case. Plaintiff correctly points out that neither the pleadings nor the evidence presented at trial supports the presence of such a theory. If the instruction actually did inject such a novel theory into the case, reversible error would result. *Lober v Sklar,* 357 Mich 166; 97 NW2d 617 (1959), *Mulcahy v Argo Steel Construction Co,* 4 Mich App 116; 144 NW2d 614 (1966), *lv den* 378 Mich 741 (1966). Furthermore, the sentence appears to be such an uncompromising assertion that, under different circumstances it conceivably could have an unwarranted and adverse effect upon another case. Accordingly, we disapprove the giving of such an instruction without greater amplification of its application to the facts of a case.

Nevertheless, we do not find that this charge rises to the level of reversible error. In closing argument defense counsel acknowledged the tragic result of the death of plaintiff's husband, but argued that "* * * medicine is not a guarantor of

anything". Such statements supported the defense theory, which could be fairly inferred from the evidence, that the proximate cause of the husband's death was not defendant's negligence and breach of the medically accepted standard of care, but, rather, was due to the individual inability of the husband's body to resist infection after all that could be done medically had been done. Also, plaintiff's counsel argued in rebuttal concerning the reference to a doctor as a guarantor. When the above-reprinted instructions are read in this light, and read together as they must be, *Froling v Bischoff,* 73 Mich App 496, 503; 252 NW2d 832 (1977), they do not constitute reversible error.

Plaintiff also argues that the instruction incorrectly stated the law. That a doctor is not a guarantor of results is a proposition firmly entrenched in Michigan law. *Zoterell v Repp,* 187 Mich 319, 330; 153 NW 692 (1915), *Roberts v Young,* 369 Mich 133, 138; 119 NW2d 627 (1963), *Viland v Winslow,* 34 Mich App 486, 488; 191 NW2d 735 (1971). As plaintiff notes, a medical practitioner warrants that he possesses the professional skill ordinarily possessed by medical practitioners as reasonably implied in light of reasonably available facilities. MCL 600.2912a(b); MSA 27A.2912(1)(b). However, contrary to plaintiff's assertions, the allegedly objectionable instruction does not negate this concept. Indeed, this concept was properly brought before the jury in the charge. The instructions in this case correctly stated the applicable law.

Affirmed.