HENRY R. LEONARD V. EDWIN A. ARMSTRONG.

*Landlord and tenant—Right of occupant to vacate premises if untenantable—Discretion of court in allowing jury to view premises.*

1. Permitting the jury, in a suit involving the tenantable condition of a dwelling-house, to view the premises, is discretionary with the court.
2. Where from defects in the construction of a dwelling-house it becomes untenantable, a tenant may vacate the premises and refuse to pay rent for the balance of his term.

Error to Wayne.    (Gartner, J.)    Argued January 23, 1889.    Decided February 1, 1889.

*Assumpsit.*    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*Moore & Moore,* for appellant.

*Charles Flowers,* for defendant.

LONG, J.    This is an action brought in a justice's court by plaintiff to recover one month's rent, under a lease for five years, at $60 per month.    Judgment was rendered for defendant.    Plaintiff appealed to the circuit court for Wayne county, where, on a trial before a jury,
73 MICH.—37.

the verdict and judgment were for the defendant. Plaintiff brings error.

The lease was executed by William B. Hayes to the defendant on March 20, 1886, at which time defendant took possession of the house, purchased the most of the furniture, carpets, etc., lived in the house through the following winter, and abandoned it in June, 1887.

It is claimed by defendant that Hayes, after promising to put the house in a habitable condition, on May 5, 1887, sold it to the plaintiff; that the reason he left the house was that it was untenantable; it being so poorly constructed that it was impossible to keep it warm, and the plumbing was so defective that the house was filled with sewer gas, making it unhealthful, and breeding disease and sickness in his family.

The plaintiff, to make his *prima facie* case, put in evidence the lease to defendant, the deed from Hayes to himself, and gave evidence in his own behalf that there was one month's rent due under the lease. Upon his cross-examination he admitted receiving the following letter from the defendant, which was put in evidence by defendant's counsel:

"June 3, 1887.

"H. R. Leonard, Esq.

"*Dear Sir:* You will please take notice that I shall surrender up possession of the house, 728 Cass avenue, on or about June 12, 1887, for the reason that the same is untenantable, and you have refused to put it in proper condition. I shall pay you rent for the month of June, not because I deem you are entitled thereto for any longer time than I occupy it, and such payment is made with the express notice that I waive no claim which I may hereafter make in the way of recoupment in any suit you may bring against me under said lease.

"Yours respectfully,
"Edwin A. Armstrong."

After serving this notice upon the plaintiff, defendant

removed from the premises, and paid rent up to July 1, 1887.

Defendant then gave evidence tending to show that before leasing the house he went through it, and it seemed to be in good condition; that during the fall and summer he discovered cracks in the plastering; that there were cracks in the walls all through, which were nicely covered up and calcimined; that these cracks opened, and the wind blew through them; that these cracks were found all around the base-boards also, which he filled up with cotton batting; that though the house had steam-heating, it could not be warmed; that a thermometer, taken from the mantel and placed on the floor would fall from 10 to 20 degrees, and in cold weather he could rarely get above 60 degrees of heat, though using a large amount of fuel, and that it required from 9 to 10 pounds of steam to do this; and at no time when it was cold weather could the rooms be made warm enough for comfort, so that he and his family were compelled to keep on overcoats and wraps to be comfortable. Defendant claimed that this was all occasioned by the defective manner in which the house was constructed; that Hayes, before transferring to Leonard, had some repairing done by placing strips of wood around the base-board.

Defendant also claimed that on the breaking up in the spring of 1887 they were troubled with a great deal of sewer gas, and upon an examination he found the plumbing very defective; that the cellar was damp, the surface water running into it; and that the cellar walls—a part of them—were damp, and covered with slime. From these causes defendant claimed that members of his family became sick. Several witnesses were called, who corroborated the testimony of the defendant.

Plaintiff, in rebuttal, called several witnesses to show that the house was comparatively new, and was well

constructed, and free from the defects claimed by defendant.

The case was submitted to the jury upon the issue thus made. The court said:

"If you find, in the first place, that the house was in such condition that it could not be properly heated, why, Mr. Armstrong could avoid the lease for that reason, and if the gas escaping from the sewer rendered the house unhealthful and unfit for occupation as a residence, that would be a defense. It is for you to say whether those are the facts, from the evidence in this case. If you find either one or the other to be the fact, why, it is a complete defense. Or if you find that both existed,— that the house could not be properly heated, and for that reason it was in a condition that it could not be occupied with comfort as a residence for the purposes for which it was rented,—if you find either or both these things to be the fact from the evidence, as I have said, that would be a defense. This being a defense, the burden of proof is upon the defendant."

This certainly was a fair submission of the issue made to the jury, and of which the plaintiff had no reason to complain. In fact it was the only issue in the case. Plaintiff's counsel contend, however, that the issue should have been limited to the condition of the house when the defendant went in, and not what it was during the time he lived there; as under the lease the defendant was to keep it in repair. In reading the whole record it appears that this made the real issue.

One witness—William E. Briscoe—testified that he went through this house frequently while it was being constructed, and that he could look out of doors through the walls in several places; that this was before the lath was put on; and that he could look through between the bricks in three or four places.

Mr. Charles Reed testified that he was a plumber, and that in May, 1886, he went there to examine the waste-pipes and laundry tubs, and found no traps underneath

the tubs; that these traps are for the purpose of preventing the escape of sewer gas; and that the plumbing was not properly done.

While other evidence was given showing the condition of the house during the winter of 1886 and 1887, it had a tendency to show what the condition of the house was when the defendant went in, and was properly admitted.

Some 19 errors are assigned, but they are too frivolous to need attention or comment, and we shall notice but one. It is contended that the court erred in refusing to permit the jury to make a personal examination of the premises. This was a matter in the discretion of the court, and we find nothing in the record showing an abuse of such discretion. From the circumstances shown, we think the court very properly confined the case to the testimony taken in open court.

We find no error in the record. If, as defendant contends, from the defects in the construction of the house it became untenantable and unfit for habitation, he was not compelled to keep it and pay rent; or if, from defects in plumbing, of which he was not advised when making the lease, sewer gas escaped, and his family became sick from such causes, and the house became untenantable and unfit for habitation from such causes, he was not compelled to keep the premises, and pay rent. He rented the premises for a dwelling for his family, believing, as it appears, that the premises were tenantable and fit for the purposes for which he rented them. After remaining in he found them unfit for the purpose for the causes above mentioned, and moved out.

In *Bradley v. Goicouria*, 67 How. Pr. 76,[1] it was said that a tenant may vacate premises in which his family is taken sick from inhaling sewer gas which penetrates the rooms by reason of defective plumbing, the landlord hav-

---

[1] Cited by counsel for defendant.

ing been notified, and neglected to remedy the evil; that in such cases there is a constructive eviction, and the tenant need not pay rent. It appears that the health officer examined the premises in question in this suit and notified the plaintiff, and he failed to remedy the defects. It was the duty of the landlord to make these repairs. They were of a general nature, and the defects existed at the time the tenant went in. The whole matter was very fairly submitted to the jury under the charge of the court. It seems to me to be a case of vexatious appeal. The whole of the questions involved were questions of fact for the jury, and submitted by the court so fairly that the plaintiff has no right to complain.

The judgment of the court below must be affirmed. In addition to the taxable costs of this Court defendant will recover $20 additional for vexatious appeal.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. CHAMPLIN, J., did not sit.