## KISTLER v. WAGONER.

1. AUTOMOBILES—SECOND COLLISION—BURDEN OF PROOF—DEATH—PROXIMATE CAUSE.

> In action by administratrix of estate of motorist whose car first collided with nonappealing defendant's car and very shortly was run into by appellant's tractor and semitrailer with a 12-ton load, plaintiff had burden of showing that it was the second and not the first collision that caused death of her decedent in order to hold appellant liable for damages resulting from such death.

2. SAME—CONTRIBUTORY NEGLIGENCE IN CAUSING FIRST COLLISION—PROXIMATE CAUSE OF SECOND COLLISION.

> If plaintiff's decedent were guilty of negligence in a first collision with nonappealing defendant, such negligence could be considered as having caused a situation whereby the two cars blocked highway which was a factor at least in the causation of a second collision when appellant's tractor and semitrailer with a heavy load struck decedent's unlighted car on appellant's left side of road during period of total darkness.

3. NEW TRIAL—PARTIAL NEW TRIAL—SUBSEQUENT NEGLIGENCE—BURDEN OF PROOF—DAMAGES.

> In action by administratrix of estate of motorist whose west-bound car first collided with an eastbound car and was then

hit by appellant's northeastbound tractor and semitrailer with heavy load as it rounded a curve, appellant who has defense founded on testimony even in case doctrine of subsequent negligence were applied should be permitted to make such defense upon which plaintiff has burden of proof if new trial were granted instead of limiting new trial to matter of damages only.

4. DAMAGES—SECOND COLLISION—BURDEN OF PROOF.
Where plaintiff's decedent, a motorist, had been involved first in one collision and very shortly his car was run into by defendant's tractor and semitrailer with heavy load, plaintiff had the burden of showing the nature and extent of the injuries received by decedent as a result of the second collision.

5. SAME—SECOND COLLISION—INJURIES RECEIVED IN FIRST COLLISION —SIZE OF VERDICT.
Where plaintiff produced no direct testimony as to her decedent's condition between first and second accidents which occurred within a short space of time, jury's verdict that appellant whose tractor and semitrailer were involved in second accident was only defendant liable was not a pronouncement that decedent had not been severely injured in first collision, but where verdict against appellant was comparatively small, it was persuasive that jury found decedent had been severely injured in first collision so as greatly to impair his earning power.

6. NEW TRIAL—DAMAGES—OTHER ISSUES—PARTIAL NEW TRIAL.
Generally the matter of damages and other issues are so blended as to make it improper for the court to restrict a new trial to the question of damages alone.

7. SAME—COMPROMISE VERDICT.
Where it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case.

8. SAME—PARTIAL NEW TRIAL—DAMAGES.
Before a partial new trial may be granted, it should clearly appear that the matter involved is entirely distinct and separable from the matters involved in the other issues, and that the new trial can be had without danger of complications with other matters, especially in the matter of alleged error in assessment of damages, wherein it should be shown the error was committed solely by the jury itself after retiring to consider its verdict.

9. Automobiles—Second Collision—Partial New Trial—Damages
   —Reinstatement of Judgment.

> In action by administratrix of estate of westbound motorist whose
> car first collided with that of an eastbound motorist and was
> then hit by northeastbound tractor and trailer belonging to
> appellant where verdict was for sum of $1,827.75 against ap-
> pellant only and appellant is willing to have judgment on the
> verdict reinstated, order granting partial new trial against
> appellant only, limited to matter of damages, was reversible
> error.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 9, 1946.   (Calendar No. 43,227.)
Decided June 12, 1946.

Case by Dorothy Kistler, administratrix of the
estate of Harold C. Kistler, deceased, against
Harold Wagoner, doing business as Wagoner Oil
Company, and Joe Dow.   Verdict and judgment
for plaintiff against Harold Wagoner, doing busi-
ness as Wagoner Oil Company, only.   New trial
granted on plaintiff's motion limited to damages
only.   Defendant Wagoner appeals.   Reversed and
remanded for reinstatement of judgment.

*Harry D. Reber,* for plaintiff.

*Mitts & Smith,* for defendant.

Reid, J.   This action is brought by plaintiff to
recover damages resulting from one or the other or
both of two collisions of automobiles occurring in
quick sequence on October 20, 1942, at a junction
of two State trunk line highways.   The automobile
owned by plaintiff's decedent was wrecked in the
collisions and decedent was injured so that he died
within 10 hours thereafter.

A verdict of no cause of action was returned for defendant Dow, the driver of one of the two cars that came into collision with the car of plaintiff's decedent, and a verdict was rendered in favor of the plaintiff against defendant Wagoner, the owner of the other car, in the amount of $1,827.75.

On August 21, 1945, the circuit court entertained plaintiff's motion for a new trial to be limited to the question of damages only, and entered an order granting the new trial requested by the motion.

Plaintiff did not appeal from the judgment for defendant Dow. Defendant Wagoner made application for leave to appeal in the nature of mandamus from the order of the circuit court, which application was granted on October 10, 1945, the appeal to be heard as a motion.

The questions involved are whether the damages awarded are sufficiently inadequate to justify a new trial, whether the issue of damages is sufficiently separable from the other issues involved to allow a partial new trial limited to the issue of amount of damages, and whether the trial court abused his discretion in granting plaintiff's motion for a new trial limited to amount of damages only.

Our Court Rule No. 47, § 2 (1945), provides,

"Partial new trials, limited to one or some of the issues or matters tried, may be ordered by trial courts or by the Supreme Court in proper cases."

Accordingly, we are to determine whether the trial judge abused his discretion in allowing a new trial on the sole question of amount of damages while affirming the verdict as to liability.

Plaintiff is the administratrix of the estate of Harold C. Kistler, who died as a result of injuries

received at approximately 7 o'clock a.m., October 20, 1942. Plaintiff's decedent had been driving his 1934 Ford sedan in a westerly direction on Michigan highway M–20 at a point west of Fremont where the road curves to the southwest. The curve is 2,270.42 feet in length and the road has a 20-foot concrete surface with center-line mark. A connecting paved roadway from Michigan highway M–82 approaches M–20 from the west and joins the paved surface of M–20 at the northerly extremity of the curve, forming a straight line with M–20 at that point. There is a stop sign at the intersection requiring traffic proceeding east on M–82 to stop for traffic on M–20. At the time of the collisions in question it was totally dark, the weather was clear and the pavement dry.

Defendant Joe Dow, accompanied by Charles Deeds, was driving his 1932 Plymouth sedan east on M–82 and approaching M–20. He stopped about 6 or 7 feet back from the westerly edge of the curve of the concrete in M–20. He then started up, and entered the intersection, turning first to his right and then to his left. An impact occurred between his car and the Kistler car close to the center line of M–20. When Dow started up, the Kistler car was, in the estimation of Charles Deeds, approaching on the curve about 100 feet away, at a speed of about 30 miles per hour. Deeds testified that the Kistler car always stayed on its own right side of M–20.

The point of impact was at the left front corner of each car. As the result of the impact the Dow car was jarred back a trifle, maybe a foot. The distance between the Dow car and the Kistler car, after they came to rest after the impact, was one and one-half feet or two feet. The Dow car came

to rest on Dow's right side of the center line, with the right rear wheel just off the edge of the pavement on the inside of the curve, and the front end headed northeast.

The Kistler car came to rest headed in a southwesterly direction on its own right-hand half of M–20. The lights of both cars were extinguished except for the fog light on the Dow car, which was turned around so that it faced the radiator of the car. The left front fender of the Dow car was crumpled and the left front wheel was bent back.

After the impact, Deeds got out of the Dow car and walked around the front of it toward the Kistler car, but did not get over to the Kistler car. It was dark and he did not get close enough so that he could see inside the Kistler car. It was standing up on its wheels but he could not see the extent of the damage to the Kistler car. While Deeds was approaching the Kistler car and "a couple of short steps away," defendant Wagoner's truck, driven by Melvin Palmer, struck the Kistler car in the front end. Deeds testified the lapse of time between the impact of the Dow car and the impact of the Wagoner truck was around 25 or 30 seconds.

Defendant Wagoner's truck, consisting of a 1941 Ford tractor and a semitrailer loaded with 12 tons of fuel oil, had been proceeding north on M–20 and had rounded the curve toward the east. In Deeds' estimation defendant's truck drove back the Kistler car from the point of impact a distance estimated by witness Deeds as between 75 and 100 feet, but estimated by Wagoner's driver Palmer as 40 feet, to the northeast, where it came to rest on the northerly side of M–20. The Wagoner truck jackknifed, turned over, and landed upright on its wheels in the ditch, facing in the opposite direction from which it had come.

Palmer testified that as he rounded the curve before the impact, he saw the Dow car on the right-hand half of the pavement, and turned to the left, intending to go around it. He did not see the Kistler car before he turned out for the Dow car, but slowed down his truck to about 10 miles an hour. Even if he had applied his brakes as soon as he saw the Dow car he couldn't have stopped because of the heavy load. He claims he relied on his ability to go around the Dow car and he saw no lights on the opposite side of the road. He swung out about 15 or 20 feet back from the Dow car to the left side of the pavement. He first observed the Kistler car when his truck was only 30 or 35 feet away from it. It was standing with its left front wheel close to the center line headed southwest. The left front wheel of the Wagoner truck came into collision with the Kistler car.

Prior to the first collision plaintiff's decedent was in good health and his normal life expectancy was 30.35 years. He was discovered lying in the front seat of his automobile following the second collision. He had no children and was survived by the widow, Dorothy Kistler, plaintiff in this case, who at the time of his death was 50 years of age and in good health. Her normal life expectancy was 20.91 years as of the time of his death. Prior to his death deceased contributed $75 or more per month for plaintiff's own benefit and purposes. Funeral bills, doctor bills and damage to the car amounted to about $518.

Defendant Wagoner's driver testified:

"*Q.* As you came around and your lights came onto the Kistler car could you see into the Kistler car?

"*A.* I could see into it, but the windshield was broke and I couldn't see anybody sitting there.

"*Q.* If there had been somebody sitting in there could you have seen them?

"*A.* Yes.

"*Q.* So that when you looked in there was nobody sitting in that car as far as you could see?

"*A.* No, there was nobody in there.  *  *  * After the collision I took my flashlight with me and .went right up to the Kistler car.  There was nobody else there at the time, but Charles Deeds came up shortly after that.  Mr. Kistler was laying down in the seat.

"*Q.* Did you notice any blood on the seat?

"*A.* Yes.

"*Q.* What did you notice about the blood?

"*A.* It was clotted on the seat already.

"*Q.* Was it hard?

"*A.* Yes.  It was clotted up some on the seat.

"*Q.* Did you go there immediately after your car came over onto its wheels again?

"*A.* Yes, sir."

Defendant Wagoner claims that this testimony, undisputed by any of plaintiff's witnesses, strongly supports a conclusion that at the time of the second impact, Kistler was already sufficiently injured to collapse to the seat of his automobile and was at that time bleeding profusely so that the blood had coagulated before he was observed by Palmer immediately following the second collision.

It is significant that neither Deeds nor Dow, although admittedly very close to the Kistler car, could see anyone sitting in it, although they claimed that it was then too dark for them to see inside.

Defendant Wagoner claims he was not guilty of negligence.  The two cars which had been in collision a matter of seconds or a few minutes before, completely blocked the road for defendant's driver. The headlights of both the other cars were out.  Defendant's driver saw the Dow car on his right side

of the road in time to have stopped, but did not so soon notice the Kistler car which was on the opposite side of the road. He turned to the left side to avoid striking the Dow car. No headlight warned him of the presence of the Kistler car. The trial judge left it to the jury to say whether an ordinarily prudent driver would have acted as defendant's driver acted.

We must consider whether the trial judge was correct in concluding that the amount of damages awarded to plaintiff was inadequate.

The Kistler car was going at about 30 miles per hour up to the moment of the collision with the Dow car and came to an instantaneous stop. After the collision, the Kistler car was on the northerly side of the pavement of M–20 and the Dow car was two or three feet away and on the other side of the highway.

Plaintiff had the burden of proving that it was the second and not the first collision that caused her husband's death in order to hold defendant Wagoner liable for the damages resulting from the death of decedent.

The order appealed from would preclude on a new trial a consideration of the following:

1. Defendant Wagoner's claim that Kistler was fatally injured in the first collision.

2. Defendant Wagoner's claim that Kistler was guilty of contributory negligence in the following particulars:

(a) That Kistler should have proceeded west on noting Dow's approach and so avoided the collision with Dow's car.

(b) That Kistler should have applied his brakes and so avoided the collision with Dow's car (Dow testified that Kistler was driving fast and that he, Dow, did not notice Kistler's car slow down. There was no testimony that Kistler slowed his car).

(c)   That Kistler drove his car at a speed greater than was reasonable and proper in view of the proximity of Dow's car and the approach of Dow's car at the intersection and the beginning of the curve.

(d)   That Kistler failed to have his car under control.

3.   Defendant Wagoner's claim that his driver Palmer was free from negligence because he was obliged to act in an unforeseen emergency, two unlighted automobiles completely blocking the highway on both sides, in the dark and on a curve.

If Kistler's negligence contributed to cause the first collision, then such negligence could be considered to have caused the situation of the two cars which was a factor at least in the causation of the second collision.   We must, however, not lose sight of the doctrine of subsequent negligence.   Defendant Dow's testimony showed that after he stopped at the stop sign for the intersection, he did not accord decedent Kistler the right of way on the through trunk line, but mistakenly supposed that Kistler would proceed west, and so he, Dow, drove his car into the part of the intersection at the beginning of the curve and into collision with the Kistler car.   But the jury found Dow free from negligence. The verdict in form at least found that neither Dow nor Kistler was negligent although the cars they were driving came into collision at this intersection when there was no other traffic near, which finding doubtless led up to the conclusion that defendant Wagoner was liable.

Even after applying the doctrine of subsequent negligence, defendant Wagoner has a substantial defense founded on testimony, which defense he should be permitted to make if any new trial is to be ordered.   The plaintiff had the burden of proof as to such defense, and of showing the nature and

extent of the injuries received by decedent as a result of the second collision. To meet such burden, plaintiff produced no direct testimony whatever as to her decedent's condition between the two collisions, except that Kistler survived for 10 hours after the two collisions. The jury determined against defendant Wagoner the very highly speculative question as to which collision caused Kistler's death, but that verdict is far from a pronouncement that Kistler was not severely injured in the first collision. In fact, the smallness of the verdict is highly persuasive of a finding by the jury that Kistler was in fact very severely injured in the first collision, to an extent that would greatly impair his future earning power.

That Kistler was so injured in the first collision could be found from the fact that he was not seen by witness Deeds, who approached within two or three feet of the car, although Deeds claims he could not see in the car; further, Palmer testified that as his truck approached Kistler's car just before the collision, Kistler could not be seen sitting upright, at which time Palmer's headlights were shining on Kistler's car; further, Palmer's testimony shows that Kistler's blood had coagulated on the seat when Palmer got to the Kistler car with his flashlight after the second collision, thus indicating that Kistler had bled profusely from injuries received in the first collision. No witness made any showing based on personal observation to the effect that Kistler was not severely injured in the first collision.

Plaintiff's claim involves highly speculative propositions. It cannot be said with any degree of certainty that the jury's verdict did plaintiff any injustice. In view of the nature of defendant Wagoner's defense and the questions involved in

determining the amount of damages, the verdict may be said to be fortunate for plaintiff.

The trial court found:

"The question whether the first or second collision, or both, was serious enough to cause death is one concerning which reasonable minds might differ under the facts and circumstances involved."

Defendant Wagoner cites from 39 Am. Jur. p. 48, § 24:

"In most cases damages and other issues are so blended and interwoven as to make it improper for the court to restrict a new trial to the question of damages alone. The instances in which a new trial upon the issue of damages alone may be proper are comparatively infrequent. Where it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case."

Defendant further cites from *Simmons* v. *Fish*, 210 Mass. 563, 570 (97 N. E. 102, 105, Ann. Cas. 1912 D, 588):

"The bald question raised upon this branch of the case is as to the power of the superior court to grant new trial upon this restricted issue. It is only in exceptional and extremely rare instances that the inadequacy of damages will not be so interwoven with liability that justice can be done without a new trial upon the whole case. Although we do not say that there cannot be such a case, it is hard to conceive of one."

See, also, *Norfolk Southern R. Co.* v. *Ferebee*, 238 U. S. 269 (35 Sup. Ct. 781, 59 L. Ed. 1303), at p. 273:

"Damages and contributory negligence are so blended and interwoven, and the conduct of the

plaintiff at the time of the accident is so important a matter in the assessment of damages, that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury.''

Defendant Wagoner also cites authorities in opposition to plaintiff's motion to limit a new trial, as follows: *Waucantuck Mills* v. *Magee Carpet Co.,* 225 Mass. 31 (113 N. E. 573); *Doody* v. *Railroad,* 77 N. H. 161 (89 Atl. 487, Ann. Cas. 1914 C, 846); *Riley* v. *Tsagarakis,* 53 R. I. 261 (165 Atl. 780); *Banaszek* v. *F. Mayer Boot & Shoe Co.,* 161 Wis. 404 (154 N. W. 637); *Moulton* v. *Langley,* 81 N. H. 138 (124 Atl. 70); *Wilentz* v. *Lonky,* 6 N. J. Misc. 711 (142 Atl. 642); *Juliano* v. *Abeles,* 114 N. J. Law, 510 (177 Atl. 666); *Gasoline Products Co., Inc.,* v. *Champlin Refining Co.,* 283 U. S. 494 (51 Sup. Ct. 513, 75 L. Ed. 1188). Appended to the last above-cited case, in 75 L. Ed. at pp. 1191–1227, is a lengthy annotation on the subject of new trial on question of damages only, on p. 1227 of which annotation appears the following quotation from 20 R. C. L. p. 222:

''Before such partial new trials are granted, however, it should clearly appear that the matter involved is entirely distinct and separable from the matters involved in the other issues, and that the new trial can be had without danger of complications with other matters. Particularly is this true when the only error in the verdict is in the amount of damages assessed, and it appears that this error was not the result of any ruling by, or charge from, the trial judge, but was committed solely by the jury itself after retiring to consider of its verdict; for in such a case it is more difficult to say that the entire verdict was not affected by the same cause from which resulted the error in the amount of damages.''

We conclude that defendant Wagoner has so substantial a defense against liability for damages caused by decedent's death that a new trial should not be granted on the amount of damages only, but the verdict unappealed from, absolving Dow, operates as a prejudice to defendant Wagoner. A new jury could feel that, Dow being freed of liability, their verdict must be against Wagoner. Plaintiff has not asked for an order setting aside the entire verdict and ordering an entire new trial, which however we are authorized to do, if we deem it proper. By her failure to appeal from the judgment in favor of Dow, plaintiff has left the matter in a condition where a new trial could not proceed on lines fair to defendant Wagoner.

Defendant Wagoner is willing that the judgment on the verdict be reinstated. It is not clear that plaintiff is entitled to a better outcome.

The order appealed from is reversed. The cause is remanded to the lower court with instructions to reinstate the verdict and the judgment thereon.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, NORTH, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.