DOOMS v STEWART BOLLING AND COMPANY

SANDERS v STEWART BOLLING AND COMPANY

Opinion of the Court

1. Products Liability—Torts—Negligence—Implied Warranty—Strict Liability.

A plaintiff in a products liability case may proceed under the tortious theories of negligence and implied warranty, but not under a theory of strict liability.

2. Products Liability—Defect Attributable to Manufacturer—Causal Connections.

A plaintiff may recover against a manufacturer of a defective product only when he is able to prove a defect attributable to the manufacturer and a causal connection between the defect and the injury or damage of which he complains.

3. Products Liability—Negligence—Defective Products—Reasonably Prudent Person.

A defect is established, in a products liability case proceeding under a theory of negligence, by proofs that the manufacturer failed to do what a reasonably prudent person would do or did what a reasonably prudent person would not have done under the circumstances.

4. Products Liability—Defective Products—Implied Warranty.

A defect is established, in a products liability case proceeding

References for Points in Headnotes

[1, 6] 63 Am Jur 2d, Products Liability §§ 127, 128.

[2] 63 Am Jur 2d, Products Liability §§ 9, 15–21.

[3] 63 Am Jur 2d, Products Liability § 78.

[4] 63 Am Jur 2d, Products Liability § 98.

[5] 63 Am Jur 2d, Products Liability §§ 4, 127, 129–134.

[7] 63 Am Jur 2d, Products Liability § 99.

[8–10] 63 Am Jur 2d, Products Liability § 101.

[11, 12] 58 Am Jur 2d, New Trial §§ 212, 213.

[13, 14, 16] 5 Am Jur 2d, Appeal and Error §§ 640, 641.
58 Am Jur 2d, New Trial § 25.

[15] 58 Am Jur 2d, New Trial § 84.

under a theory of implied warranty imposed by law, by proof that the product is not reasonably fit for the use intended, anticipated, or reasonably foreseeable.

5. Products Liability—Defective Products—Unreasonably Dangerous Conditions—Strict Liability in Tort.

A product must be not only defective, but must also be in an unreasonably dangerous condition, in order to hold a manufacturer liable for injury caused by the product under the theory of strict liability in tort.

6. Products Liability—Instructions to Jury—Strict Liability in Tort—Implied Warranty—Prejudice.

A jury instruction, in a products liability case, which included instructions on both strict liability in tort and implied warranty was not prejudicial to a defendant manufacturer where under the facts the jury could find liability under either theory and any prejudice which might have occurred by reason of the jury interpreting strict liability as liability without fault was precluded by the trial court's definition of strict liability.

7. Negligence—Contributory Negligence—Breach of Warranty.

Contributory negligence, as characteristically understood in the common law of negligence, is not a defense to a breach of warranty action.

8. Products Liability—Negligence—Implied Warranty—Misuse of Products.

A defendant's negligence is not pertinent to a products liability action based upon implied warranty; however, a defendant may offer evidence to establish misuse of a product.

9. Products Liability—Misuse of Products—Proximate Causes—Defects.

A plaintiff in a products liability case may not recover if the proximate cause of the plaintiff's injury is found to have stemmed from his own conduct, such as misuse of the product, and not from the product's lack of fitness, because the proofs have failed to establish a causal connection between the defect and the injury.

10. Products Liability—Misuse of Products—Defects—Implied Warranty—Proximate Causes.

The fact that a plaintiff's misuse of a product concurred with a defect in the product to cause injury to the plaintiff will not bar recovery under a theory of implied warranty if the failure of the manufacturer to provide a product reasonably fit for the

use intended or reasonably foreseen is found to be a proximate cause of the injury, unless it can be said that the plaintiff voluntarily and unreasonably proceeded to encounter the known risk.

11. DAMAGES—NEW TRIAL—JUDGE'S DISCRETION—COURT RULES.

The question of damages is one of fact for the jury, but under court rules a party may be granted a new trial on the basis that damages awarded were inadequate or excessive; the grant or denial of a new trial is within the discretion of the trial court, and a grant or denial of a new trial grounded upon inadequate damages will be reversed on appeal only where the trial court has palpably abused its discretion (GCR 1963, 527.1[4], 527.6).

12. NEW TRIAL—LEGALLY RECOGNIZED REASONS—JUDGE'S DISCRETION—SUPPORT FOR DECISION.

The question to be determined when considering whether a trial court abused its discretion in granting a new trial, where the reason given for granting the new trial is legally recognized, is whether by any reasonable interpretation of the record there is support for the decision.

13. NEW TRIAL—APPEAL AND ERROR—PARTIAL NEW TRIAL—CIRCUMSTANCES OF CASE.

Appellate courts do not generally favor the practice of granting partial new trials in personal injury cases because liability and damage issues are commonly interwoven; however, a partial new trial is justified where the circumstances of a case establish that justice will be fully and better served.

14. NEW TRIAL—PARTIAL NEW TRIAL—DAMAGES—LIABILITY.

A trial court did not err in granting a new trial limited to the issue of damages in a case where the plaintiff was injured while using a machine and where it appears that were the case retried on all the issues the result would not be different on the question of liability and, under the circumstances, that the interest of justice would not be served by incurring the added time and expense necessary for a full-blown retrial.

15. TRIAL—JURY REQUESTS—REQUESTS TO VIEW EVIDENCE—JUDGE'S DISCRETION.

A trial court's denial of a jury's request to see a machine which caused a plaintiff's injury in a products liability case was not error where the record is replete with photographs, blueprints and drawings of the machine, and the record shows that material changes had been made in the machine subsequent to

the injury; the grant or denial of such a request is discretionary, and no abuse of discretion occurred.

CONCURRENCE BY M. J. KELLY, J.

16. TRIAL—NEW TRIAL—DAMAGES—DISPARATE AWARDS—DISCRETION.
   *The grant of a new trial on the issue of damages alone as to one of the plaintiffs is not an abuse of discretion under the circumstances and on the facts of the case, where there were two plaintiffs who suffered simultaneous and similar injuries and the award of damages to one was much greater than to the other.*

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted December 4, 1975, at Detroit. (Docket Nos. 19957, 22207). Decided March 23, 1976. Leave to appeal denied, 397 Mich —.

Complaints by Mack Dooms and Willie Sanders against Stewart Bolling and Company, a manufacturer of a machine, and Michigan Mutual Liability Insurance Company, a workmen's compensation carrier for plaintiffs' employer, for damages for injuries incurred when plaintiffs' hands were caught in the machine. The cases were consolidated. Judgment for plaintiffs against defendant Stewart Bolling and Company only. Defendant Stewart Bolling's motion for a new trial was denied, and defendant Stewart Bolling was ordered to stipulate to an *additur* as to plaintiff Sanders or proceed to a new trial on the issue of damages only. Defendant Stewart Bolling appeals. Affirmed.

*Rains, Block & Dean,* for plaintiffs.

*Harvey, Kruse & Westen, P. C.* (by *James D. Hunter),* for defendant Stewart Bolling & Company.

*Martin, Bohall, Joselyn, Halsey & Rowe,* for

defendant Michigan Mutual Liability Insurance Company.

Before: J. H. GILLIS, P. J., and ALLEN and M. J. KELLY, JJ.

ALLEN, J. The Court is presented with relatively significant questions pertaining to the law of product liability in Michigan. The circumstances foreshadowing this appeal began when plaintiffs, Messrs. Dooms and Sanders, suffered severe hand injuries on a rubber milling machine during the course of their employment at Detroit Rubber Company on 3 June 1969.[1] Each plaintiff commenced separate suits against Stewart Bolling and Company (the manufacturer of the machine) and Michigan Mutual Liability Insurance Company (the insurer of plaintiffs' employer). The cases were subsequently consolidated. Plaintiffs claimed Stewart Bolling was liable on the grounds that the machine did not have adequate safety devices incorporated into the design, and that the safety trip cable on the machine was inaccessible to the operator at critical points. Plaintiffs claimed liability against Michigan Mutual on the theory that it had breached its contract of workmen's compensation insurance in failing to warn of the unsafe condition of the machine after having undertaken an inspection. Proof was presented on both sides, and the jury returned verdicts against Stewart Bolling—$300,000 for Dooms and $50,000 for Sanders. It rendered a verdict of no cause of action in

---

[1] It seems that as Dooms, the regular operator, was running the machine, his left hand adhered to sticky rubber and became entangled in the rollers of the machine. He went for the safety trip cable but was unable to reach it. Sanders responded to Dooms' yells, tried to render assistance, and his right hand became caught in the machine. Eventually, Dooms manipulated the position of his body so as to reach the safety cable and stop the machine; however, not before both men had suffered serious physical harm.

favor of Michigan Mutual. Stewart Bolling moved for a new trial which was denied. Plaintiff Sanders filed motions for *additur* and new trial. The trial judge ordered defendant Stewart Bolling to stipulate to an *additur* of $150,000 as to Sanders or proceed to a new trial on the issue of damages. This appeal followed.

## I.

*Was it reversible error for the trial court in a product liability suit to instruct on strict liability?*

Stewart Bolling claims error occurred when the trial judge instructed the jury on three possible theories of recovery: negligence, implied warranty, and strict liability. It argues that our Supreme Court has never suggested that one could recover for personal injury by asserting a claim of strict liability against a manufacturer, and maintains that the instruction on strict liability amounted to directing verdicts for plaintiffs.

Plaintiffs refer the Court to the substance of the instruction. They argue essentially that it isn't prejudicial error for a trial judge to put a strict liability label on an otherwise recognized cause of action.

It is undisputed that in Michigan a plaintiff may proceed under at least two tortious theories of recovery in product liability: negligence and implied warranty. *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120, 135; 90 NW2d 873 (1958), *Manzoni v Detroit Coca-Cola Bottling Co,* 363 Mich 235, 241; 109 NW2d 918 (1961), *Kupkowski v Avis Ford, Inc,* 395 Mich 155; 235 NW2d 324 (1975). However, the debate continues with respect to whether the product liability theory styled strict liability in tort exists in this state.

In *Baker v Rosemurgy,* 4 Mich App 195, 200; 144
NW2d 660 (1966), the Court seems to have recog-
nized the theory:

> "Plaintiff's theory of strict liability in tort falls also.
> Even if the test set forth in 2 Restatement of the Law
> of Torts, 2d § 402a, for this special form of liability were
> applied to a rifle, plaintiff's own conduct again defeats a
> cause of action."

Moreover, a Federal court and legal commentators
refer to Michigan as a strict liability jurisdiction.[2]
On the other hand, a recent panel of this Court in
*Rutherford v Chrysler Motors Corp,* 60 Mich App
392, 394 fn 1; 231 NW2d 413 (1975), noted that the
doctrine of strict liability in tort is nonexistent in
Michigan. In *Cova v Harley Davidson Motor Co,* 26
Mich App 602, 612; 182 NW2d 800 (1970), the
Court appeared willing to assent to its *de facto*
existence but disapproved of the label "strict liabil-
ity". Throughout the opinion in *Williams v Detroit
Edison Co,* 63 Mich App 559; 234 NW2d 702 (1975),
this Court used the terms implied warranty in law
synonymously with strict liability in tort, noting
that which of the two labels ought to be used need
not be decided to resolve the case. Finally, we
mention in passing that the Michigan Supreme
Court has not directly endorsed any tortious theo-
ries of recovery in product liability beyond that of
negligence and implied warranty.

We believe that sound reasons militate against
adding another theory to the law of product liabil-
ity in this state. Therefore, we refuse to sanction
an instruction on strict liability in tort in a prod-
uct liability case. First and foremost, we believe

---

[2] *See Cova v Harley Davidson Motor Co,* 26 Mich App 602, 612 fn
20; 182 NW2d 800 (1970), *Williams v Detroit Edison Co,* 63 Mich App
559, 566 fn 1, 568–569 fn 4; 234 NW2d 702 (1975).

such a theory is unnecessary. As will be shown, it appears inconceivable that a plaintiff might fail to recover under our tort warranty of fitness theory, yet recover under a strict liability in tort theory. Secondly, as emphasized in *Cova, supra,* and *Chestnut v Ford Motor Co,* 445 F2d 967 (CA 4, 1971), adding more labels most likely enhances the chance of causing confusion. It would seem that the law of product liability is plagued by semantical pitfalls, and the Court does not desire to contribute to this legal quagmire.[3]

The question remains whether the giving of an instruction on strict liability in the instant case requires that we reverse. We begin with the instruction involved:

"We come now to the third theory upon which the plaintiffs bring this suit * * * [t]hat has to do with this matter of strict liability of a seller of a product for physical harm to the user or consumer. It's the law that anyone who sells any product in a defective, *unreasonably dangerous* condition to the user, or consumer is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to the property: first, the seller is engaged in the business of selling such a product; and, secondly, that it's specifically expected to, or does reach the user or consumer without substantial change of the condition it's sold. The rules which I have just given you apply, although first, the seller has exercised all possible care in the preparation and sale of his product; and secondly, that the user or consumer has not bought the product from, or entered into any contractual relations with the seller. Now, in your

[3] One can fully appreciate the wisdom of Judge (now Justice) LEVIN in *Cova v Harley Davidson Motor Co, supra,* 614, when he suggests that:

"Indeed, it might be helpful if we abandoned the continued use in this context of our present and misleading terminology of warranty and representation, express and implied, and strict liability in tort, and simply refer to the manufacturer's liability by the neutral term 'product liability'."

consideration of the foregoing, you should apply the instructions heretofore given in connection with the burden of proof and proximate cause. In negligence cases, with regard to the claim of product defect, it is the law of our state that the plaintiff must show you that there was, in fact, a defect in the product at the time it left the possession and control of the defendant. Therefore, if plaintiff has not proven to your satisfaction that there was a defect in existence at the time it left the possession and control of the defendant, or that any such defect was not a proximate cause of the accident, you should find in favor of the defendant in connection with this theory of the plaintiff. If there has been a modification of the machine from the time it left the possession and control of the defendant Bolling, and that modification was the sole cause of the accident and injury in these cases, or in either case, you should return a verdict in favor of the defendant, accordingly." (Emphasis added.)

The first part of the instruction parallels the language in Restatement Torts 2d, § 402A. The remainder described those elements a plaintiff must prove to establish a prima facie case in product liability, irrespective of the theory of liability:

"Common to most products liability cases, regardless of the theory of liability, is the nature of certain proofs required to support a finding of liability. In *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 98–99; 133 NW2d 129 (1965), this Court commented on the nature of these proofs.

" 'As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product.'

"While the Court in *Piercefield, supra,* was concerned with a breach of warranty theory, the above elements

of liability are equally applicable to a lawsuit sounding in negligence." *Caldwell v Fox,* 394 Mich 401, 409–410; 231 NW2d 46 (1975).[4]

What distinction, other than defenses, exists between the theory of implied warranty in law, the theory of negligence and strict liability?[5] The key appears to lie in the term defect. When proceeding under a theory of negligence, the element of defect is established by proofs that the manufacturer failed to do what a reasonably prudent person would do or did what a reasonably prudent person would not have done under the circumstances. Under implied warranty imposed by law a defect is established by proof that the product is not reasonably fit for the use intended, anticipated or reasonably foreseeable. See Michigan Standard Jury Instructions, 25.21 and 25.23. Under the strict liability in tort theory in Restatement Torts 2d, § 402A, a product not only must be defective (presumably any defect), it must also be in an "unreasonably dangerous condition". This Court opines that if the condition of a product is unreasonably dangerous as well as defective (strict liability theory) then the product would necessarily be unfit for the use anticipated or reasonably foreseeable (implied warranty in law theory).

We cannot conceive that had the jury found the rubber milling machine to be in a defective and unreasonably dangerous condition, it could still find the machine reasonably fit for the use anticipated or reasonably foreseeable. Conversely, we

---

[4] *Compare Awedian v Theodore Efron Mfg Co,* 66 Mich App 353; 239 NW2d 611 (1976).

[5] The term "strict liability in tort" as used in this opinion and as used in prior opinions *(see Williams* and *Cova, supra)* refers to strict liability in tort as defined in Restatement Torts 2d, § 402A. It does not refer to what often is the lay understanding of such term, viz: liability without fault or absolute liability.

cannot conceive that if the jury determined the machine was reasonably fit for the use anticipated or reasonably foreseeable (thus rejecting implied warranty) it could nevertheless find that the machine was defective and unreasonably dangerous (thus finding strict liability). As was stated by this author in *Williams,* supra:

" * * * [T]he application of the doctrine of implied warranty may have the same or substantially the same results as applying the doctrine of strict tort liability. 54 ALR3d at 1083."[6] 63 Mich App at 567.

Therefore, the Court finds that the instruction on strict liability in tort as well as implied warranty was, at most, redundant, and concludes that the instruction was not prejudicial to defendant. Any prejudice which might have occurred by reason of a lay jury interpreting strict liability as liability without fault—which is precisely what defendant contends did occur—was precluded by the trial court's definition of strict liability in terms identical to the definition used in the Restatement and in prior decisions of this Court. Added support for our position stems from the language of our Supreme Court in *Cook v Darling,* 160 Mich 475, 481; 125 NW 411 (1910):

"It seems to be a well-settled doctrine in this State that where property is bought for a particular purpose, and only because of its supposed fitness for that, and where articles are bought for consumption, and the vendor sells them for that express purpose, the consequences of unsoundness are so dangerous to health and life and the failure of consideration is so complete that,

---

[6] This is not to say that the scope of strict liability in tort as provided in § 402A of the Restatement equals the scope of our fitness warranty. It does not. A particular product could be unfit for the use intended without being unreasonably dangerous.

where there is not an express warranty, there is an implied warranty that the goods are fit for the purpose for which they were bought, and that articles of food are fit for consumption. In such cases the vendor is held to a strict accountability.'"[7]

## II.

*Is contributory negligence a defense to a theory of recovery based upon the tort warranty of fitness?*

Over defendant Stewart Bolling's objection, the trial judge instructed the jury that if it found Stewart Bolling "liable for a breach of implied warranty in regard to the rubber milling machine, then I further instruct you that any contributory negligence on the part of either plaintiff is not a defense". On appeal, defendant takes the position that this is not the law in Michigan, *Baker v Rosemurgy,* 4 Mich App 195, 200; 144 NW2d 660 (1966), *Casey v Gifford Wood Co,* 61 Mich App 208, 218; 232 NW2d 360 (1975), and that the court erred reversibly when it gave such instruction in lieu of an instruction on plaintiffs' misuse of the machine as requested by defendant. Defendant argues that the record supports negligence on plaintiffs' part. Plaintiffs counter that no reversible error was committed because the defense of contributory negligence is inapplicable to an action grounded upon implied warranty, *Kujawski v Cohen,* 56 Mich App 533; 224 NW2d 908 (1974), and because the court instructed that plaintiffs had to establish that there was a reasonable use when a hazardous condition leading to injury arose.

In *Kujawski v Cohen, supra,* 542, a panel of this Court ruled as follows:

---

[7] *See* Doelle, *Product Liability Law in Michigan,* 54 Mich State B J 866, 874 (Nov, 1975).

"Contributory negligence, as it is characteristically understood in the common law of negligence, is *not* a defense to a breach of warranty action. Something more than mere negligence must be shown to bar recovery, something approaching 'assumption of the risk' or disregard of known danger. *Barefield v La Salle Coca-Cola Bottling Co,* 370 Mich 1, 5; 120 NW2d 786, 789 (1963); *Baker v Rosemurgy,* 4 Mich App 195, 200; 144 NW2d 660, 663 (1966)."

The *Kujawski* rule makes sense when it is considered that a defendant's negligence is not pertinent to an action based upon implied warranty. This does not mean that a defendant is precluded from offering evidence to establish misuse of a product:

"[W]arrantors are not to be held as guarantors against injury to consumers resulting from the consumer's misuse of the product." *Barefield v La Salle Coca-Cola Bottling Co, supra,* at 5.

However, the question of a plaintiff's product misuse as it relates to implied warranty is better directed to the question of proximate cause rather than contributory negligence as that term is defined in an ordinary negligence case. See Annotation, *Contributory Negligence or Assumption of Risk as Defense to Action for Personal Injury, Death, or Property Damage Resulting From Alleged Breach of Implied Warranty,* 4 ALR3d 501. Also see *Imperial Die Casting Co v Covil Insulation Co,* 264 SC 604; 216 SE2d 532 (1975).

If *the* proximate cause of a plaintiff's injury is found to have stemmed from his own conduct, such as misuse of a product, and not from the product's lack of fitness, he may not recover since the proofs have failed to establish a causal connection between the defect and injury. *Casey v Gifford*

*Wood Co, supra,* at 218.[8] Moreover, if the failure of a manufacturer to provide a product reasonably fit for the use intended or reasonably foreseen is found to be *a* proximate cause of the injury to plaintiff, the fact that plaintiff's misuse concurred with the defect to cause the harm will not bar recovery under a theory of implied warranty unless it can be said that plaintiff voluntarily and unreasonably proceeded to encounter the known risk.[9] *Baker v Rosemurgy, supra,* at 200.

In the instant case, the record is devoid of evidence tending to show that it was the plaintiffs' conduct rather than the defect which caused the harm. Further, the court instructed the jury that to recover under implied warranty plaintiffs had to prove, among other things, "that the rubber milling machine was not reasonably fit for the use or purposes anticipated or reasonably foreseeable by the defendant in one or more of the ways claimed by the plaintiffs", and "that the failure to provide an adequate safety device was a proximate cause of the injury to the plaintiffs". Moreover, it instructed that "if the failure to provide an adequate safety device was not a proximate cause of the injuries" verdict should be for defendant.

We thus conclude that the lower court did not err in instructing the jury that contributory negli-

[8] In retrospect this author concedes that when he wrote in *Casey, supra,* p 218, "Contributory negligence remains a defense. In this regard, we are well aware that the jury may have determined * * * *the* proximate cause of the injury was plaintiff's own negligence" he inadvertently conveyed the impression that in all implied warranty actions contributory negligence was a defense. As stated in the discussion above the author only intended to state that plaintiff's own negligence, if found to be *the* cause of the accident, remains a defense.

[9] "Where a person must work in a place of possible danger, the care which he is bound to exercise for his own safety may well be less, due to the necessity of giving attention to his work, than is normally the case." *Byrnes v Economic Machinery Co,* 41 Mich App 192, 202; 200 NW2d 104 (1972).

gence was not a defense to implied warranty, and that the gist of what defendant was trying to get across in its requested instruction on misuse, to the extent the evidence supported it, was adequately covered by the instructions given.

## III.

*Did the trial court abuse its discretion in granting a motion by one of the plaintiffs for an additur or, in the alternative, a new trial as to damages?*

GCR 1963, 527.1(4) permits the court to grant a new trial where the verdict is "clearly or grossly inadequate". GCR 1963, 527.6 provides:

"When a finding is made that the only error in the trial is the inadequacy or excessiveness of the verdict, the court may deny a motion for new trial on condition that within 10 days the non-moving party consents in writing to the entry of judgment of an amount found by the judge to be the lowest or highest amount respectively which the evidence will support."

GCR 1963, 527.1 authorizes the grant of a new trial "to all or any of the parties and on all or part of the issues".

In the instant case, the jury awarded plaintiff Dooms $300,000, and plaintiff Sanders $50,000. Counsel for Sanders moved for *additur* or new trial. The trial court ordered defendant Stewart Bolling to stipulate to an *additur* of $150,000, so that the total verdict in favor of Sanders would be $200,000, or, in the alternative, to submit to a new trial on damages only. Stewart Bolling refused to stipulate to. the *additur* and was granted leave to appeal on the propriety of the trial court action.

Defendant suggests that *additur* is not allowed in Michigan since it constitutes an improper inva-

sion of the jury's province. *Goldsmith v Detroit, Jackson & Chicago R Co,* 165 Mich 177; 130 NW 647 (1911), *Lorf v City of Detroit,* 145 Mich 265; 108 NW 661 (1906). However, these cases were handed down long before the adoption of GCR 1963, 527.6. Several recent decisions recognize the use of *additur* or *remittitur* to cure an inadequate or excessive verdict. *Pippen v Denison Div of Abex Corp,* 66 Mich App 664; 239 NW2d 704 (1976), *Barger v Galazen,* 61 Mich App 182; 232 NW2d 354 (1975), *Soave Construction Co v Lind Asphalt Paving Co,* 56 Mich App 202, 205; 223 NW2d 732 (1974), *Dougherty v Rezolin, Inc,* 48 Mich App 636; 210 NW2d 899 (1973), *Nicholaides v Demetri,* 38 Mich App 102; 195 NW2d 793 (1972). Moreover, the issue in this case is not whether *additur* is permissible. The trial court ordered a new trial on the question of damages unless the defendant agreed to the *additur.* Since defendant refused to stipulate to the *additur,* the question on appeal concerns the trial court's action in granting a new trial on the grounds that the $50,000 damage award to plaintiff Sanders was clearly inadequate.

Although the question of damages is one of fact for the jury[10], as noted earlier, under the court rules, a party may be granted a new trial on the basis that damages awarded were inadequate or excessive. The grant or denial of a new trial is within the discretion of the trial court.[11] More fundamentally, appellate courts will reverse a grant or denial of a new trial grounded upon inadequate damages only where the trial court has "palpably" abused its discretion. *Brown v Arnold,*

[10] *Scho v Socony Mobil Oil Co, Inc,* 360 Mich 353; 103 NW2d 469 (1960), *Lawrence v Tippens,* 53 Mich App 461, 466; 219 NW2d 787 (1974).

[11] *Arnsteen v United States Equipment Co,* 390 Mich 776 (1973).

303 Mich 616, 627; 6 NW2d 914 (1942).[12] Where, as here, the reason given for granting a new trial—clearly inadequate damages—is legally recognized, the question becomes whether by any reasonable interpretation of the record there is support for the decision. *Benmark v Steffen,* 9 Mich App 416, 422; 157 NW2d 468 (1968). See also *Williams Panel Brick Mfg Co v Hudsin,* 32 Mich App 175; 188 NW2d 235 (1971).

The instant trial court listed the following as determinative in granting its order:

"The case before the Court presents a truly unique situation in that it involves two cases consolidated for trial involving two men with serious and remarkably similar injuries. Notwithstanding the obvious similarities, there was a tremendous discrepancy in the jury's verdict, i.e., Mack Dooms received $300,000.00 and Willie Sanders $50,000.00. In view thereof it appears to be incumbent upon this Court to examine into whether or not there existed sufficient differences in damages to justify this tremendous variation, and also if there were errors in the trial or circumstances which existed which unfairly prejudiced Willie Sanders.

"Upon a review of the record in a comparison of the damages suffered by each plaintiff the following seems significant:

"Each man suffered a crushing injury to one hand.

"Each man is right-handed, but Mack Dooms suffered injury to his left hand and Willie Sanders to his right.

"Each man's injury resulted in partial amputation of the effected hand.

"According to medical testimony each man has lost effective use of the hand involved.

"Mack Dooms required more surgical procedures following the injury.

"Each man has suffered a loss of earning capacity and loss of earnings.

---

[12] *See* decisions cited in *Benmark v Steffen,* 9 Mich App 416; 157 NW2d 468 (1968).

"Mack Dooms was able to return to his former employer, although at a lesser pay.

"Willie Sanders was not able to return permanently to his former employer and was without employment for a much longer period of time than Mack Dooms. The employment which he finally obtained was at a substantially reduced wage.

"In summary of the above, it becomes clear to this Court that there existed nothing in the record of these cases to justify the extremely large difference in the two verdicts."

The Court agrees with defendant Stewart Bolling that the record shows plaintiff Dooms' injury to be relatively more severe than Sanders' which resulted in a greater degree of suffering and called for more medical attention. Moreover, the lower court tended to over-emphasize the fact that Sanders was off work for a longer period. The record seems to indicate that the period of unemployment was due in part to the disposition as well as the capacity of Sanders. Conversely, there were, as the court below points out, striking similarities between the two injuries. Further, it was Sanders who lost effective use of the hand he used the most by nature. Yet, the damages awarded amounted to approximately 16% of what Dooms was awarded. We cannot say that the trial court abused its discretion in finding that a significantly larger sum was supported by the record, and that plaintiff was entitled to a new trial on the grounds that the damage award was clearly inadequate.

Defendant questions the authority of the trial court to grant plaintiff Sanders a new trial limited to the issue of damages. It is true that, as a rule of thumb, appellate courts do not favor the practice of granting partial new trials in personal injury cases, despite authorization from GCR 1963, 527.1, owing to the fact that liability and damage issues

are commonly interwoven. *Kistler v Wagoner,* 315 Mich 162; 23 NW2d 387 (1946), *Bias v Ausbury,* 369 Mich 378, 383; 120 NW2d 233 (1963). The only exception to this notion that the Supreme Court has thus far recognized is where "liability is clear". *Trapp v King,* 374 Mich 608; 132 NW2d 640 (1965). See also *Doutre v Niec,* 2 Mich App 88, 90; 138 NW2d 501 (1965).

An additional exception seems to have been posited in *Mulcahy v Argo Steel Construction Co,* 4 Mich App 116, 130; 144 NW2d 614 (1966). A departure from the notion against granting partial new trials is justified where the circumstances of the case establish that justice will be fully and better served. In this light, due consideration must be given to the decision of the trial court who presided over the case. The focal point of liability in the instant case depended upon whether the rubber milling machine was equipped with adequate safety devices. There was substantial proof presented to show it was not. It appears evident from the evidence that were the case retried on all the issues, the result would not be different on the question of liability. Under the circumstances of this case, we believe that the lower court did not err in granting a new trial limited to damages, and that the interest of justice would not be served by incurring the added time and expense necessary for a full-blown retrial.

## IV.

*Did the trial court commit reversible error by refusing the jury's request to view the rubber milling machine?*

During its deliberations the jury made a written request to see the machine. The request was denied by the trial judge and on appeal appellant

contends the denial constitutes reversible error. GCR 1963, 513 states:

"Upon application of either party or upon its own initiative, the court *may* order an officer to conduct the jury as a whole to view any property or place where a material fact occurred." (Emphasis supplied.)

Under the rule the determination of the trial court is made discretionary. Likewise, under well established case law a trial judge may, in his discretion, refuse to permit the jury to view the premises where the injured party claims the accident occurred. *Leonard v Armstrong,* 73 Mich 577, 581; 41 NW 695 (1889), *Mulliken v City of Corunna,* 110 Mich 212, 214; 68 NW 141 (1896). We find no abuse of discretion. The record is replete with photographs, blueprints and drawings of the machine. Further, the record shows that material changes had been made in the machine subsequent to the accident. The safety trip wire had been lowered some six inches. Given these circumstances the trial court may well have concluded that permitting a view would in itself have caused confusion and have been grounds for error.

We have reviewed the remaining assignments of error presented by the parties on appeal, and concluded that they either have not been properly preserved for appellate review, or are so insubstantial as to need no formal discussion.

The verdict of no cause of action against defendant Michigan Mutual Liability Company in each of the consolidated cases is affirmed. Costs to Michigan Mutual Liability Company against plaintiff Dooms. The verdict against defendant Stewart Bolling and Company in favor of plaintiff Dooms is affirmed with costs to plaintiff. A new trial on the question of damages only is ordered in *Sanders v*

*Stewart Bolling and Company,* with costs to plaintiff Sanders.

Affirmed, costs as indicated above.

J. H. Gillis, P. J., concurred.

M. J. Kelly, J. *(concurring).* I concur in Judge Allen's opinion because I feel that under all of the circumstances of this fiercely contested trial all parties were well represented and had what I perceive to be a fair trial. I do not agree with the statement that "the record is devoid of evidence tending to show that it was the plaintiffs' conduct rather than the defect which caused the harm". There was evidence from which the jury could have found plaintiffs guilty of contributory negligence. However the jury obviously did not. An appellate court cannot give more weight to that evidence than did the jury. If the jury had, however, found no cause of action, I would likewise vote not to disturb that verdict.

We are taking a critical step here in affirming the Sanders remand for re-trial on the issue of damages only. I feel compelled to mention this because I think we should make it clear to the bench and bar that we are opting for a rule which would vest discretion in the trial court where liability has been determined favorably to plaintiff and adverse to defendant to order a new trial on the basis of damages only where the damage award was either clearly inadequate or clearly excessive. We do not go that far in this holding because we are sustaining a jury verdict as to liability and damages in favor of Dooms who had by far the greater familiarity with this machine and who would be more likely to have been no caused than Sanders who had been placed on this machine only the day of the accident, and whose

injuries resulted from an impulsive attempt to save his fellow man from catastrophe.

Had this same jury not assessed these awards I would vote differently. In my opinion $50,000 for the loss of use of a hand is not per se inadequate. It is the comparison which offends. The jury must have been influenced by one or more of the prejudicial factors mentioned by the trial judge in his opinion filed January 24, 1974. His on-the-scene perspective is far the better one in the overall analysis of this issue. I cannot say there was a clear abuse of discretion.